KENYON, Appellee,

v.

SCOTT FETZER COMPANY, Halex Division, Appellant, et al.▪

[Cite as *Kenyon v. Scott Fetzer Co., Halex Div.* (1996), 113 Ohio App.3d 264.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69649.

Decided Aug. 5, 1996.

*James M. Kehn,* for appellee.

*Robert C. McClelland* and *Lynn R. Grabiak*, for appellant.

JAMES D. SWEENEY, Judge.

Defendant-appellant-employer the Scott Fetzer Company, Halex Division ("Fetzer") appeals from the decision of the common pleas court which affirmed the determination by the Industrial Commission recognizing a subsequent condition (myocardial infarction) of plaintiff-appellee-employee Lawrence Kenyon for workers' compensation benefits. For the reasons adduced below, we affirm.

A review of the record on appeal indicates that on August 11, 1987, Kenyon was injured when he slipped and fell while in the course and scope of his employment as a tool and die maker at Fetzer. On the basis of this injury, he was awarded the right to participate in Ohio's Workers' Compensation Fund for the conditions of (1) left inguinal hernia and (2) aggravation of preexisting osteoarthritis of the left hip. See claim No. L010994–22. On April 16, 1990, Kenyon underwent *left* hip replacement surgery, which was recognized by Fetzer for workers' compensation purposes on the allowed claim. On April 24, 1992, Kenyon underwent *right* hip replacement surgery, the physical symptoms of which were determined to be causally related to the allowed injury of August 11, 1987. On April 29, 1992, four days following the right hip replacement surgery, Kenyon, while recuperating in the hospital from his latest surgery, was scheduled to be transferred from Ashtabula County Medical Center to Hillside Hospital in Warren, Ohio for rehabilitation and physical therapy. While the two ambulance attendants were placing Kenyon, who was strapped to a gurney, into the back of the ambulance, one of the attendants lost his grip on the gurney. As a result, the gurney flipped over and lodged on the rear bumper of the ambulance, leaving Kenyon dangling in midair, upside down, and still strapped to the suspended gurney.[1] In the attempt to disengage the overturned gurney from the ambulance bumper, the gurney dropped to the asphalt pavement below. Kenyon's head, shoulder, arm and elbow struck the pavement. The gurney was then righted, and Kenyon was successfully loaded into the ambulance. During the ambulance ride, Kenyon recalled, he was very warm and sweating. Shortly after arriving at Hillside Hospital following a ride of approximately one hour and fifteen minutes, Kenyon exhibited further symptoms consistent with a heart attack. The Hillside Hospital personnel suspected that Kenyon was suffering from a heart attack and immediately transferred him to Trumbull Memorial Hospital, where a heart attack

1. Kenyon refiled a previously dismissed negligence lawsuit against the ambulance company on April 29, 1994, alleging injury to his left arm and elbow and a heart attack from having been dropped. See Ashtabula County Common Pleas Court case No. 94CV262.

(myocardial infarction) was diagnosed and treated. Prior to this cardiac event, Kenyon had had no notice or knowledge of a coronary disease.

Thereafter, Kenyon filed a C–86 motion on June 19, 1992 with the Bureau of Workers' Compensation, requesting that the 1992 heart attack be recognized as an additional, or "flow-through," condition in his allowed claim from August 11, 1987. This motion was granted by the district hearing officer on August 2, 1993. On January 5, 1994, the regional board of review affirmed the decision of the district hearing officer. On February 18, 1994, the Industrial Commission of Ohio affirmed the decision of the regional board of review.[2] On April 15, 1994, Fetzer filed an appeal in the common pleas court. On September 6, 1995, after having conducted an oral hearing before the court,[3] the trial court affirmed the decision of the regional board of review. This timely appeal followed, presenting one assignment of error:

"Appellee's new injury, a myocardial infarction, was not directly and proximately caused by any of the previously allowed conditions in his claim."

 The allowance of workers' compensation benefits for residual, or flow-through, injuries is authorized by R.C. 4123.84(C). Whether this type of injury is compensable depends upon a showing that the previously allowed injury was a direct or proximate cause of the claimant's present residual injury. *Iiams v. Corporate Support, Inc.* (1994), 98 Ohio App.3d 477, 479–480, 648 N.E.2d 902, 903–904, citing *Fox v. Indus. Comm.* (1955), 162 Ohio St. 569, 55 O.O. 472, 125 N.E.2d 1.

The trial court properly considered Kenyon's claim *de novo*. *Iiams*, 98 Ohio App.3d at 479, 648 N.E.2d at 903–904, citing R.C. 4123.512(D); *Oswald v. Connor* (1985), 16 Ohio St.3d 38, 42, 16 OBR 520, 523–524, 476 N.E.2d 658, 662–663, and *Grant v. Ohio Dept. of Liquor Control* (1993), 86 Ohio App.3d 76, 619 N.E.2d 1165.

Dr. Charms, a board-certified cardiologist testifying on behalf of the claimant, testified that the heart attack was a "direct result" of the allowed injury by virtue of a series of factors, referred to by the parties as a domino theory.[4] This theory noted that Kenyon exhibited decreased mobility, ulcers, and pain due to the

---

2. The various decisions of the administrative review made prior to the common pleas court filing are not contained in the record on appeal. Likewise, the records from the administrative review hearings are not in the record on appeal.

3. At this hearing, Kenyon testified in person. Bernard Charms, M.D., testified by videotape deposition on behalf of the claimant. Robert Botti, M.D., testified by videotape deposition on behalf of the employer.

4. Dr. Charms noted that Kenyon was markedly overweight at five feet, eight inches tall and two hundred seventy pounds.

allowed hip replacement surgeries. According to Charms, these surgeries, their recovery periods, and the attendant stress and trauma, in other words the cumulative nature of the allowed injuries and their treatments, aggravated and accelerated Kenyon's coronary condition. Charms added that coronary disease progresses for many reasons, among which is the splintering of plaque from the blood vessel walls as a result of an event which would produce a rapid rise in the heart rate. The heart attack, according to Charms, was directly and proximately triggered by the sudden episode of fright from being dropped while on the gurney, and if he had not been dropped, Kenyon would not have suffered a heart attack at that time. Finally, Charms stated on recross-examination that the coronary disease present in Kenyon was not caused by the dropping of the gurney.

Dr. Botti, testifying on behalf of the employer, stated that Kenyon's heart attack was "more likely related" to the negligence of the ambulance personnel in dropping the gurney on which Kenyon lay. Additionally, Botti admitted that he had issued a report dated September 27, 1993, in which he answered a qualified "yes" to the question whether the heart attack was causally related to the allowed condition considered.

Fetzer argues that *Iiams, supra,* 98 Ohio App.3d at 479, 648 N.E.2d at 903–904, is dispositive. In *Iiams,* the claimant had an allowed injury to the lower back and right elbow. While claimant was in the hospital recuperating from surgery to correct the low back injury, the side of claimant's bed collapsed, causing her to suffer an injury to her neck. The court in *Iiams,* affirming the decision of the common pleas court, declined to allow the neck strain to be recognized as a flow-through or residual injury for workers' compensation purposes on the basis that there was no causal relationship established between the allowed injury and the residual injury by virtue of the intervening cause (the collapse of the bed), without which the residual injury would not have occurred.

The residual injury under review is not analogous to the injury in *Iiams.* While both cases share a common fact surrounding the residual injuries in that there was a dropping of the claimant just prior to the outward manifestation of the residual injury, the underlying cause of the residual injury in *Iiams* is distinguishable from the heart attack herein. In *Iiams,* the collapse of the bed caused the new injury; there was nothing demonstrating a connection between the allowed injury and the neck strain apart from the claimant's being in the hospital bed recuperating from the allowed injury's surgery. Unlike the injury in *Iiams,* the heart attack in the case *sub judice* did bear a direct causal connection to the allowed condition. The expert evidence before the court *sub judice* demonstrated that the allowed condition and the trauma and treatments there-from over time aggravated the coronary disease in Kenyon. The dropping of

Kenyon's gurney caused a fright episode and a concurrent rapid rise in Kenyon's heart rate, which triggered the heart attack but did not cause the underlying coronary disease. The assignment of error is overruled.

*Judgment affirmed.*

SPELLACY, C.J., and DYKE, J., concur.