OPINION
{¶ 1} The defendant-appellant, the Administrator of the Bureau of Workers' Compensation, appeals the judgment of the Crawford County Common Pleas Court allowing the plaintiff-appellee, Pamela J. Plaster, to participate in the workers' compensation fund for the condition of a herniated cervical disk at C6-7.
 {¶ 2} On November 6, 2002, Plaster sustained an injury in the course of her employment. At that time, Plaster was employed by the defendant-appellee, Elbeco, Inc. As part of her job, Plaster was required to remove bundles of fabric from a high-sided crate and place the bundles on her work table to perform other duties. The bundles weighed approximately 50 pounds, and Plaster has indicated that she moved between 200 and 300 bundles per day. *Page 3 
 {¶ 3} The Bureau of Workers' Compensation allowed Plaster's claim for the conditions of sprain of neck, sprain of thoracic region, and sprain right trapezius muscle. Plaster later filed a motion to amend her claim to add the condition of herniated disc at C6-7. The bureau denied Plaster's motion, and the Industrial Commission upheld the bureau's determination. Plaster appealed to the court of common pleas pursuant to R.C. 4123.512. At trial, the only issue presented to the jury was whether Plaster was entitled to participate in the workers' compensation fund for the additional condition of herniated disk at C6-7. The trial court entered judgment based on the jury's verdict in favor of Plaster, which the bureau appeals, asserting two assignments of error for our review.
 First Assignment of Error The trial court erred in instructing the jury on the theory of aggravation because there was no evidence presented by Plaintiff/Appellee on the theory of aggravation and, Plaintiff/Appellee presented her case on the theory of direct causation.
 Second Assignment of Error The trial court erred in instructing the jury on the theory of "dual causation" because Plaintiff/Appellee presented only one theory as to what caused her injury.
 {¶ 4} In the first assignment of error, the bureau contends its rights were substantially affected when the trial court instructed the jury on the theory of aggravation. The bureau contends that Plaster has continuously argued direct and *Page 4 
proximate causation rather than aggravation. The bureau also argues that the evidence does not support the theory of aggravation because neither the plaintiff's expert nor the defendant's expert opined that the herniated disk was the result of aggravation of a pre-existing condition. The bureau argues that its expert witness, Dr. Gordon Kaplan, opined that Plaster's herniated disk was the result of natural deterioration. The bureau apparently contends that Plaster's expert witness, Dr. Bohdan Chopko, opined that the herniated disk was the direct and proximate cause of Plaster's performance of her job.
 {¶ 5} To support its second assignment of error, the bureau contends that its rights were substantially affected when the trial court instructed the jury on the theory of dual causation. The bureau contends that the theory of dual causation is explained in Murphy v. CarrolltonMfg. Co. (1990), 61 Ohio St.3d 585, 575 N.E.2d 828. The bureau contends that in Murphy, the claimant produced testimony from two expert witnesses, and each expert had a different opinion about the claimant's decedent's cause of death. The bureau attempts to distinguishMurphy by arguing that Plaster produced only one expert witness who had only one opinion as to why Plaster suffered the herniated disc. The bureau contends that the dual causation instruction was misleading to the jury because it allowed "the jury to consider multiple reasons why [Plaster] herniated the disc in her neck including the theory of aggravation." *Page 5 
 {¶ 6} In her brief, Plaster refutes the assignments of error jointly. First, Plaster contends that even if the trial court erred, the "two-issue rule" prevents judgment in favor of the bureau. Under the "two-issue rule," Plaster contends that when a jury's verdict may be based upon two or more issues, any error in the jury instructions will be disregarded if any of the other issues supports the jury's verdict. Relying on the "two-issue rule," Plaster contends that the bureau failed to preserve its appellate rights because it did not request special interrogatories from the jury. Plaster contends that the jury was instructed on direct causation, dual causation, and aggravation. Therefore, the jury could have rendered its verdict based on any one of those theories, and it is impossible to know which theory the jury relied upon since there were no special interrogatories on the verdict form.
 {¶ 7} Second, Plaster contends that the instructions on dual causation and aggravation were supported by the evidence. Plaster contends that Dr. Gordon Kaplan gave an opinion on aggravation. Specifically, Plaster argues that Dr. Kaplan indicated that Plaster suffered the pre-existing condition of degenerative disc disease. On cross-examination, Dr. Kaplan opined it is possible that a repetitive trauma could aggravate a pre-existing condition, such as degenerative disc disease. Plaster also relies on the expert testimony of Dr. Chopko, who opined that Plaster had a history of degenerative disc disease, which was exacerbated by the work Plaster performed at Elbeco. Furthermore, Plaster *Page 6 
contends that both doctors cited various causes of a herniated disc, such as natural aging, degeneration, trauma, and repetitive trauma. Plaster contends that this evidence supports the court's instruction on dual causation.
 {¶ 8} Finally, Plaster contends that the bureau incorrectly relied onWard v. Kroger, 106 Ohio St.3d 35, 2005-Ohio-3560, 830 N.E.2d 1155, for the proposition that she may not raise the theories of aggravation and dual causation at trial because she failed to do so at the administrative level. Plaster contends Ward stands for the proposition that new conditions may not be raised on administrative appeal to the trial court. However, she contends that a new theory of causation is not synonymous with a new condition, and as such, there is no Supreme Court case law preventing her from doing so.
 {¶ 9} Before we address the merits of the bureau's assignments of error, we must first determine whether Plaster was entitled to raise at trial new theories of causation, which were not raised at the administrative level. In her brief, Plaster apparently admits that she raised new theories of causation on appeal to the trial court and attempts to find legal justification for having done so. Before discussing the holding in Ward, which the bureau relies upon, we find it helpful to address several other cases.
 {¶ 10} The Eleventh District Court of Appeals considered a similar case in Bright v. E C Lyons (Sept. 20, 1993), 11th
Dist. No. 93-G-1753. In Bright, the *Page 7 
injured worker filed a claim to participate in the workers' compensation fund. Id. at *1. The bureau denied her claim, the Industrial Commission affirmed that decision, and Bright appealed to the common pleas court. Id. In its second assignment of error, the bureau argued that the trial court erred by allowing Bright to amend her pleadings to assert a new theory of recovery, aggravation of a preexisting condition. Id. The court of appeals discussed Civ.R. 15(B) and noted that the bureau was not subjected to an "ambush" at trial because Bright's experts had given deposition testimony concerning aggravation approximately nine months prior to trial. Id. at * 2. The court also stated, "[additionally, several pronouncements indicate that in a case where a new theory of recovery is first presented at the trial level, the evidence is admissible since the claimant * * * is not attempting to prove a newinjury, but rather, merely advances a new theory of causation."
(Emphasis added). Id., citing Torres v. General Motors Corp. (Nov. 21, 1991), 8th Dist. No. 59122, at 7-8; McManus v. EatonCorp. (May 16, 1988), 5th Dist. No. CA-7346, at 7-8; Conventry v. AT T Technologies, Inc., (Sept. 25, 1986), 10th Dist. No. 86AP-313, at 3, 4; Maitland v. St. Anthony Hospital (Oct. 3, 1985), 10th Dist. No. 85AP-301, at 10-11.
 {¶ 11} Plaster cites the holding in Robinson v. AT T NetworkSystems, 10th Dist. No. 02AP-807, 2003-Ohio-1513, to show that Ward is inapplicable to this case. Unlike the situation inRobinson, here, Plaster is not barred based on her *Page 8 
failure to appeal a final order of the Industrial Commission. InRobinson, the injured worker filed a claim to participate in the workers' compensation fund in 1993. The bureau allowed Robinson's claim for "disc herniation L4-5 and L5-S1." Id. at ¶ 2. In 1998, Robinson filed a motion with the bureau requesting an additional allowance for two other conditions. Id. at ¶ 3. The bureau allowed one condition and disallowed Robinson's alleged "post-traumatic degenerative disc disease." Id. The Industrial Commission upheld the bureau's decision, and Robinson did not appeal to the common pleas court. Id. In 1999, Robinson filed a new claim for "aggravation of post-traumatic degenerative disc disorder." Id. at ¶ 5. The bureau and the Industrial Commission allowed the claim, and AT T appealed to the common pleas court. Id. at ¶ 5-6. AT T argued the claim was barred as res judicata since Robinson had failed to appeal the Industrial Commission's order in 1998. Id.
 {¶ 12} The court of appeals held that an appeal filed under R.C.4123.519[1] constitutes a de novo review of both the evidence and the law of a case. Id. at ¶ 15. On that theory, the court held that "neither party is limited to the evidence presented during previous administrative proceedings." Id. The court noted that "the only distinguishing factor between the two claims is whether the accident directly caused, or served to aggravate, Robinson's [degenerative disc disorder] ." *Page 9 
Id. at ¶ 16. Robinson was clearly seeking participation in the fund based on the same injury in relation to his employment. Id. at ¶ 17. Therefore, the court held that Robinson's subsequent claim based on aggravation was barred since he had failed to appeal the Industrial Commission's final order on his original claim. Id. at ¶ 18.
 {¶ 13} Although the parties rely on Robinson, this case can be easily distinguished. In this case, Plaster is not barred based on her failure to appeal the Industrial Commission's final order. The facts of this case more closely resemble the situation in Bright, where an amendment based solely on the theory of causation was sought during the appeal to the trial court. As in Bright, we note that both parties' experts, Drs. Chopko and Kaplan, testified at videotaped depositions prior to trial. Dr. Kaplan testified on May 6, 2004, and Dr. Chopko testified on September 2, 2006. During cross-examination of Dr. Kaplan, Plaster's counsel clearly set forth a series of questions as to whether aggravation was possible, and Kaplan gave his expert opinion on whether those situations were possible. However, Kaplan's ultimate conclusion was that Plaster's herniated disc was caused by the "natural aging process." On the other hand, Dr. Chopko opined that Plaster's herniated disk was caused by degenerative disc disease "exacerbated" by lifting on the job. Although the bureau asked about other possibilities and Plaster's failure to provide a full medical history when she was *Page 10 
treated by Dr. Chopko, he testified that he had not changed his opinion. An aggravation theory was being advanced two and one-half years prior to trial, and if not at that point, it was certainly introduced with Dr. Chopko's testimony approximately two months prior to trial.
 {¶ 14} Finally, the bureau relies on the Supreme Court's holding inWard, in which now retired Justice Resnick distinguished between a new injury and new theories of causation. While the Supreme Court held that an appeal filed pursuant to R.C. 4123.512 does constitute a de novo review, the court rejected the broad standard of review espoused by the Tenth District in Robinson. Ward, at ¶ 8-9. Instead, the court held that allowing the trial court to rule on the worker's ability to participate in the fund based on conditions not presented at the administrative level essentially usurps the bureau's authority. Id. at ¶ 10. Although the court held that new conditions may not be advanced on appeal to the common pleas court, the court explicitly stated that it was expressing "no opinion as to whether [Robinson] was correctly decided. Specifically, [the court did] not address the issue whether a claim for a certain condition by way of direct causation must necessarily include a claim for aggravation of that condition for purposes of either R.C.4123.512 or res judicata." Id. at ¶ 15, fn. 1. Accordingly, we hold that the trial court did not err by allowing Plaster to pursue her claim based on the theory of aggravation. Any error in the court's conclusion would be harmless, particularly since the bureau knew *Page 11 
for several months, if not several years, before trial that Plaster would pursue the theory of aggravation.
 {¶ 15} We note that our holding may, at first glance, appear to be in conflict with Davidson v. Bur. Of Workers' Compensation, 2nd Dist. No. 21731, 2007-Ohio-792. However, inDavidson, the court was faced with an injured worker seeking to participate in the fund for a new lumbar sprain. Id. at ¶ 3. During his appeal to the trial court, he argued he should be allowed to also raise the condition of aggravation of pre-existing lumbar sprain. Id. at ¶ 10. The appellate court noted that the Supreme Court had reserved ruling on the issue of new theories of causation, but held that pursuant to Ward, Davidson could not pursue a claim in the trial court for an aggravation of a pre-existing condition because "[intrinsically, these are two separate conditions." Id. at ¶ 27. In this case, the condition claimed was not aggravation of degenerative disc disease. The only claimed condition was a herniated disc, which both experts agreed was the diagnosis. How that disc became herniated was the issue, specifically, whether the disc was herniated in the course of Plaster's employment. Whether the disc herniated as a direct and proximate cause of her work, or whether the disc herniated because her work aggravated the pre-existing condition of degenerative disc disease, the resulting condition is the same, and that sole resulting condition is the basis of Plaster's claim. *Page 12 
 {¶ 16} "In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and `must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights.'" Kokitka v. Ford MotorCo., 73 Ohio St.3d 89, 1995-Ohio-84, 652 N.E.2d 67, quoting Becker v.Lake Cty. Mem. Hosp. W. (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165. "It is well established that the trial court will not instruct the jury where there is no evidence to support an issue." Murphy v. CarrolltonMfg. Co. (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, citingRiley v. Cincinnati (1976), 46 Ohio St.2d 287, 348 N.E.2d 135. "However, the corollary of this maxim is also true." Id., citing 89 Ohio Jurisprudence 3d (1989) 354-355, Trial, Section 289. "`In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.'" Id., citingFeterle v. Huettner (1971), 28 Ohio St.2d 54, 275 N.E.2d 340, at the syllabus.
 {¶ 17} In this case, the trial court instructed the jury on the theory of aggravation. Specifically, the trial court stated:
 Employer's [sic] must take their employees as they find them and assume the risk of having an employee's preexisting condition aggravated by some injury which would not hurt or bother a perfectly healthy person. It is not necessary for the employee to prove that the aggravation is substantial in order to receive benefits in the worker's compensation fund. *Page 13 
(Trial Tr., Vol. II, Mar. 17, 2007, at 48-49). This instruction is supported by the evidence. First, Plaster testified about her employment at Elbeco. Plaster described the crates from which she was required to remove the fabric. (Trial Tr., Vol. I, Mar. 17, 2007, at 32-33). Plaster stated that the fabric was bundled together, and that each bundle weighed between 50 and 60 pounds. (Id. at 33:15-16). Plaster testified that she moved between 200 and 300 bundles of fabric per day. (Id. at 35). On cross-examination, Plaster admitted that beginning in July 2001, she had been treated by a chiropractor for problems with her neck. (Id. at 69). Plaster also admitted that at that time, her chiropractor had indicated that her conditions were not work-related. (Id.).
 {¶ 18} The jury then watched the video deposition of Dr. Chopko, Plaster's expert witness.[2] On direct examination, Dr. Chopko indicated that a herniated disk may be caused by degenerative disease and trauma, including repetitive trauma. (Dep., Chopko, Bohdan, Nov. 7, 2006, at 10). When Plaster saw Dr. Chopko for treatment, she revealed that she had had some pain in her neck over the prior three months (since August 2002). (Id. at 11; 13). Dr. Chopko testified that Plaster had a herniated disk at C6-7, and the only "cure" required surgery. *Page 14 
The following exchange then took place between Dr. Chopko and Plaster's attorney:
 Q: All right. Now, Dr. Chopko, then based upon the histories you obtained and the results of your examinations, your treatments and your surgical procedure, do you have an opinion to a reasonable degree of medical certainty and probability as to whether or not Pamela Plaster sustained the additional condition of herniated cervical disc C6 and 7 as a direct and proximate result of her work activities at Elbeco, Inc., on or about 8-6-02. First of all, Doctor, do you have an opinion?
 A: Yes.
 Q: Okay. And, Doctor, what then is your opinion, and would you please give us the basis of your opinion?
 A: My opinion is that this patient had a background of degenerative disease to the spine, which was markedly exacerbated by the events surrounding her employment, ah, namely the heavy lifting issues that she described to me, and it is certainly a plausible chain of events that repetitive lifting of bales of 50-plus pounds of weight can cause a cervical disc herniation.
 Q: And, Doctor, I note in your prior Discovery Deposition you had substantially said the same and you were asked to what probabilities were you talking about rather than the word plausible, and I believe you indicated, what, 75 percent odds?
 A: 75 percent, yes.
(Dep., Chopko, at 21-22). On cross-examination, Dr. Chopko testified that Plaster had not revealed her chiropractic treatments beginning in 2001 as part of her medical history, and he stated that there were other possible causes of a herniated disc. However, at the end of his testimony, Dr. Chopko testified that the *Page 15 
information he had just learned about Plaster's chiropractic medical history had not changed his medical opinions. (Id. at 40).
 {¶ 19} The jury also watched the video deposition of Dr. Kaplan, the bureau's expert. [3] Dr. Kaplan indicated that he had reviewed records concerning Plaster's medical history and also completed a physical examination. (Dep., Kaplan, Gordon, Jul. 27, 2006, at 11; 13). Dr. Kaplan diagnosed Plaster with a herniated disk at C7, and noted that she had a history of degenerative disc disease. (Id. at 16; 19). Dr. Kaplan opined that there was no reason why the repeated movements Plaster made at work would strain her neck; instead, the movements would strain her lower back (lumbar), and possibly her mid-back (thoracic). (Id. at 19; 24). Dr. Kaplan stated to a reasonable degree of medical certainty that he could find no incident in Plaster's history that directly caused the herniated disc, and therefore, he opined that she was injured as a result of the natural aging process. (Id. at 23-24). Also on direct examination, the bureau asked Dr. Kaplan if Plaster's work aggravated her pre-existing degenerative disc disease, and he opined that it did not. (Id. at 24). *Page 16 
 {¶ 20} On cross-examination, Dr. Kaplan indicated that a herniated disc may be the result of several factors. (Id. at 33). He testified that repeated trauma can cause a herniated disc, and that trauma can combine with degenerative disc disease to cause a herniated disc. (Id. at 34). On re-direct, Dr. Kaplan reiterated that Plaster's work would not have caused an injury to her cervical spine, and that the primary cause of the herniated disc was the natural degenerative process. (Id. at 42-43).
 {¶ 21} Clearly, the evidence in this case supports a jury instruction for aggravation. We agree with the bureau that Plaster's counsel talked about the "direct and proximate cause" of the herniated disc, and perhaps such classification was misleading. However, upon review of the record, it is clear that the claimant was pursuing an aggravation theory of causation. Perhaps some of counsel's statements and questions could have been more artfully posited; however, in this case, any error on counsel's behalf was harmless in light of the evidence. Furthermore, we cannot find the bureau prejudiced or "ambushed" by a sudden new theory of causation. As we noted above, the doctors' depositions were respectively taken two and one-half years and two months prior to trial, and Dr. Chopko had apparently been deposed during discovery and had given similar testimony. The doctors' trial testimony regarding aggravation cannot be a surprise *Page 17 
to the bureau, particularly when the bureau questioned its own expert about aggravation. Accordingly, the first assignment of error is overruled.
 {¶ 22} In the second assignment of error, the bureau contends the trial court erred when it instructed the jury on dual causation. A dual causation instruction is warranted where there is evidence of two or more proximate causes of an injury. Plaster contends that the "two-issue rule" applies, and any error by the trial court is non-prejudicial.
 {¶ 23} The Ohio Supreme Court has recognized the "two-issue rule," which results from the appellant's need to show not only an error, but a prejudicial error. Hampel v. Food Ingredients Specialties, Inc.,89 Ohio St.3d 169, 186, 2000-Ohio-128, 729 N.E.2d 726, citing Smith v.Flesher (1967), 12 Ohio St.2d 107, 110-111, 233 N.E.2d 137. The "two issue rule:"
 "as generally applied is that, where there are two causes of action, or two defenses, thereby raising separate and distinct issues, and a general verdict has been returned, and the mental processes of the jury have not been tested by special interrogatories to indicate which of the issues was resolved in favor of the successful party, it will be presumed that all issues were so determined; and that, where a single determinative issue has been tried free from error, error in presenting another issue will be disregarded."
Hampel, at 185, quoting H.E. Culbertson Co. v. Warden (1931),123 Ohio St. 297, 303, 175 N.E. 205. See also Sites v. Haverstick (1873),23 Ohio St. 626. *Page 18 
 {¶ 24} The Supreme Court has noted that the "two-issue rule does not apply where there is a charge on an issue upon which there should have been no charge." Ricks v. Jackson (1959), 169 Ohio St. 254, 257,159 N.E.2d 225, citing Gottesman v. Cleveland (l944), 142 Ohio St. 410,52 N.E.2d 644. However, the court noted that there may be occasions where a jury charge, improperly given, is not prejudicial. Id. The Supreme Court has noted that when a jury charge is improperly given, prejudice is generally presumed. Hampel, at 186, citing Wagner v. RocheLaboratories, 85 Ohio St.3d 457, 461, 1999-Ohio-309, 709 N.E.2d 162. However, the court distinguished Wagner and stated that "Ricks does not purport to set forth a rule of mandatory or automatic reversal whenever there is a charge on an issue upon which there should have been no charge." Id. Accordingly, the court held that an appellate court must examine the record to determine whether the appellant was prejudiced by the improper instruction. Id.
 {¶ 25} The evidence in this case does not support a jury instruction on dual causation. To participate in the workers' compensation fund, the claimant must show that his or her injury was caused by his or her employment. Both experts agreed that Plaster had degenerative disc disease, and neither expert opined that the degenerative disc disease was caused by Plaster's performance at work. Furthermore, Dr. Kaplan opined that the herniated disc was the result of the natural aging process and was unrelated to Plaster's employment. Therefore, the *Page 19 
only causal relationship established at trial was aggravation of a pre-existing condition, as discussed above.
 {¶ 26} Although the trial court erred in giving an instruction on dual causation, upon review of the record, we find the court's error non-prejudicial. The bureau knew before trial which jury instructions Plaster had requested. The bureau timely objected to the instructions at trial, and knowing the court's decision before the instructions were read to the jury, the bureau did not request special interrogatories. The jury was sent to deliberate with a general verdict form and conflicting testimony from two expert witnesses. "The testimony of a medical expert is vital to a workers' compensation claimant's being able to prove that his or her injuries meet the requirements for participation in the Workers' Compensation Fund." Schuller v. UnitedStates Steel Corp., 103 Ohio St.3d 157, 2004-Ohio-4753, 814 N.E.2d 857, at ¶ 13. In any case where expert testimony is given, "the jury alone, as the trier of fact, has the duty to decide what weight should be given to the testimony of any expert witness." Kokitka, at 92, citingState v. Thomas (1982), 70 Ohio St.2d 79, 434 N.E.2d 1356. Apparently, the jury believed Dr. Chopko's testimony.
 {¶ 27} On this record, the "two-issue rule" applies. The bureau cannot show prejudice as the result of the trial court's improper jury instruction on dual *Page 20 
causation since the jury could have easily rendered its verdict based on the theory of aggravation. The second assignment of error is overruled.
 {¶ 28} Having overruled the bureau's assignments of error, the judgment of the Crawford County Common Pleas Court is affirmed.
Judgment affirmed.
ROGERS, P.J., and SHAW, J., concur.
[1] Former R.C. 4123.519 is the current R.C. 4123.512.
[2] The video deposition was taken on November 2, 2006. The video, which was shown to the jury, was filed in the trial court on November 17, 2006. The deposition was also transcribed, with the transcript being filed in the trial court on November 7, 2006. On page 76 in volume I of the trial transcript, the record reflects that the jury viewed Dr. Chopko's video deposition.
[3] Dr. Kaplan's deposition was taken on May 6, 2004. At that time, the deposition was videotaped and transcribed. The video was filed in the trial court on July 18, 2006, and the transcript was filed on July 27, 2006. *Page 1