[Cite as *Leasure v. UVMC*, 2017-Ohio-7196.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| JANET LEASURE | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 2016-CA-21 |
| | : | |
| v. | : | T.C. NO. 14-CV-3 |
| | : | |
| UVMC, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____11th____ day of _____August_____, 2017.

. . . . . . . . . .

DENNIS A. BECKER, Atty. Reg. No. 0005511, 526 A Wards Corner Road, Loveland,
Ohio 45140
        Attorney for Plaintiff-Appellant

DOUGLAS S. JENKS, Atty. Reg. No. 0079647 and GARY W. AUMAN, Atty. Reg. No.
0010414,110 N. Main Street, Suite 1000, Dayton, Ohio 45402
        Attorneys for Defendant-Appellee Upper Valley Medical Center

ERIC J. TARBOX, Assistant Attorney General, Atty. Reg. No. 0041459, 150 E. Gay
Street, 22nd Floor, Columbus, Ohio 43215
        Attorney for Defendant-Appellee Administrator, Bureau of Workers' Compensation

. . . . . . . . . . . .

DONOVAN, J.

        **{¶ 1}** Plaintiff-appellant Janet J. Leasure appeals a decision of the Miami County

Court of Common Pleas, Civil Division, finding that the evidence failed to establish that she is entitled to additional worker's compensation benefits for the condition of lumbar spondylosis with which she has been diagnosed. After a bench trial held on January 30, 2015, the trial court issued its decision denying Leasure's claim for worker's compensation benefits on September 29, 2016. Leasure filed a timely notice of appeal with this Court on October 28, 2016.

{¶ 2} On February 1, 1982, Leasure slipped and fell while walking to her housekeeping job at Dettmer Hospital, n/k/a/ Upper Valley Medical Center. Leasure was thirty years old at the time of her fall. As a result of the fall, Leasure filed a claim for worker's compensation and was subsequently awarded benefits for her injuries. Over the years, the following conditions have been allowed as a result of Leasure's claim, to wit: right hand sprain; partial tear of the medial meniscus, right leg; right ankle sprain; lumbosacral sprain; loose body, right knee; osteoarthritis, right lower leg; degenerative joint disease, right knee; chronic hypertrophic synovitis, right leg; mechanical loosening of prosthetic joint, right knee; piriformis syndrome; and posterior superior iliac spine syndrome. Additionally, Leasure had arthroscopic surgery to repair her right meniscus on January 9, 1997. On June 6, 1998, Leasure had total knee replacement surgery on her right knee. Thereafter, Leasure had surgeries on February 28, 2007, and February 25, 2014, related to her right knee replacement.

{¶ 3} In addition to her injuries from the fall in 1982, Leasure has developed several health problems unrelated to her worker's compensation claim. These conditions include thyroid disease, diabetes, carpal tunnel syndrome, a pinched nerve radiating pain into her shoulder, and polyneuropathy (a condition related to her diabetes). Leasure also

suffers from degenerative arthritis throughout her body which has been found to be unrelated to her fall in 1982. Leasure weighed approximately 213 pounds immediately prior to her fall. Since her fall, Leasure has never weighed less than 200 pounds, standing at approximately 5 feet 5 inches tall. One of Leasure's doctors, Gary LaBianco, M.D., reported that her obesity has exacerbated her arthritis and caused several problems with her left and right ankles that are unrelated to her 1982 worker's compensation claim. In a report generated on February 6, 2008, Dr. LaBianco noted that Leasure "has neglected to lose any weight over the entire time and at this point she has less and less range of motion in the left ankle."

{¶ 4} On January 6, 2014, Leasure filed a complaint against Dettmer Hospital (n/k/a Upper Valley Medical Center) and the Bureau of Worker's Compensation (BWC) in which she sought benefits for the additional condition of lumbar spondylosis. Specifically, Leasure argued that the injuries that she sustained in the 1982 fall caused the condition of lumbar spondylosis with which she has been currently diagnosed. Defense expert Doctor Paul Hogya testified that lumbar spondylosis is a deteriorating condition of the lower back involving degenerative disc disease and arthritis. The discs that separate the lumbar vertebrae flatten and bulge out laterally over time, and the joints that connect the vertebrae become arthritic. Dr. Hogya testified that approximately eighty percent of everyone over the age of forty has lumbar spondylosis. Both Dr. Hogya and Leasure's expert, Dr. Jonathan Paley, testified that lumber spondylosis is primarily an age-related condition. In addition to her age, Dr. Hogya testified that he believes that Leasure's obesity directly contributes to her lumbar spondylosis. We note that Dr. Paley testified that he is an orthopedic surgeon who has been treating Leasure since

approximately 1994 or 1995.

{¶ 5} Leasure's medical records establish that her lumbar spondylosis developed slowly over several years. When Leasure was in her early thirties, lower back x-rays were taken in 1982 and 1985 which indicated no lumbar spondylosis present. However, in 1997, when Leasure was forty-six years old, x-rays taken of her lower back indicated minimal spondylosis in two lumbar levels. Dr. Paley and Dr. Hogya both testified that by the time Leasure was fifty-eight years old in 2009, her spondylosis had spread throughout the entirety of the lumbar area of her spine.

{¶ 6} The BWC filed an answer to Leasure's complaint on February 4, 2014, in which it stated that she should not be entitled to receive worker's compensation benefits for lumbar spondylosis. On February 13, 2014, Upper Valley filed its answer also seeking denial of Leasure's claim for benefits. As previously stated, a bench trial was held on January 30, 2015, after which all parties were permitted to file post-trial memoranda in support of their respective positions. On September 29, 2016, the trial court issued a decision denying Leasure's request to add lumbar spondylosis to her 1982 worker's compensation claim.

{¶ 7} It is from this judgment that Leasure now appeals.

{¶ 8} Leasure's sole assignment of error is as follows:

{¶ 9} "THE TRIAL COURT ERRED IN FINDING LEASURE WAS NOT ENTITLED TO ADDITIONALLY PARTICIPATE FOR THE ADDITIONAL CONDITION OF LUMBAR SPONDYLOSIS BY WAY OF AGGRAVATION ON A FLOW-THROUGH BASIS."

{¶ 10} In her sole assignment of error, Leasure contends that the trial court erred when it denied her request to add lumbar spondylosis to her 1982 worker's compensation

claim. Leasure argues that the evidence adduced at trial was sufficient to establish by a preponderance of the evidence that her lumbar spondylosis was caused by her 1982 fall on a flow-through basis. Specifically, Leasure argues that she "developed an altered gait as a result of the allowed conditions from her injury of February 1, 1982[,] and such altered gait" caused her lumbar spondylosis to become symptomatic, therefore entitling her to benefits arising out of her 1982 worker's compensation claim.

{¶ 11} Workers' compensation statutes must be liberally construed in favor of the employee. R.C. 4123.95. However, in reviewing a trial court judgment after a bench trial, we are guided by a presumption that the trial court's findings are correct. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). We also may not substitute our judgment for that of the trial court where there is "competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." *Id.* at 80. " 'A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.' " *Gevedon v. Ivey,* 172 Ohio App.3d 567, 2007-Ohio-2970, 876 N.E.2d 604, ¶ 54 (2d Dist.), quoting *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.

{¶ 12} "The 'rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *In re J.Y.,* 2d Dist. Miami No. 07-CA-35, 2008-Ohio-3485, ¶ 33, quoting from *Seasons Coal Co.,* 10 Ohio St.3d at 80.

{¶ 13} "In order to establish a right to workers' compensation benefits for harm or death arising from an accidental injury, it is necessary for the claimant to show by a preponderance of the evidence that a direct and proximate causal relationship existed between his injury and the harm or death. * * * 'Proximate cause' is a happening or event which as a natural and continuous sequence produces an injury without which the result would not have occurred." *Randall v. Mihm*, 84 Ohio App.3d 402, 406, 616 N.E.2d 1171 (2d Dist. 1992).

{¶ 14} It is undisputed that Leasure has lumbar spondylosis. In order to succeed on her workers' compensation claim to participate for the additional condition of lumbar spondylosis, however, Leasure had to demonstrate by a preponderance of the evidence that she suffered from the additional condition and that it had been proximately caused by her workplace injury, i.e., the slip and fall in February of 1982. R.C. 4123.01(C); *Fox v. Indus. Comm. of Ohio,* 162 Ohio St. 569, 125 N.E.2d 1 (1955).

{¶ 15} "Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion." *Darnell v. Eastman,* 23 Ohio St.2d 13, 261 N.E.2d 114 (1970), syllabus. "When expert medical testimony is required in a case to establish a causal connection between the industrial injury and a subsequent physical condition, the proof must establish a probability and not a mere possibility of such causal connection." *Randall v. Mihm,* 84 Ohio App.3d 402, 406, 616 N.E.2d 1171 (2d Dist.1992). "At a minimum, the trier of fact must be provided with evidence that an employee's employment-related activity 'more

likely than not' caused the employee's injury." *Cyrus v. Yellow Transp., Inc.,* 169 Ohio App.3d 761, 2006–Ohio–6778, 865 N.E.2d 62, ¶ 8 (10th Dist.), quoting *Shumaker v. Oliver B. Cannon & Sons, Inc.,* 28 Ohio St.3d 367, 369, 504 N.E.2d 44 (1986). "An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue." *Stinson v. England,* 69 Ohio St.3d 451, 633 N.E.2d 532 (1994), paragraph one of the syllabus. "Although no 'magic words' are required, the expert's testimony, when viewed in its entirety, must equate to an expression of probability." *Davis v. Ryan,* 10th Dist. Franklin No. 11AP–198, 2012–Ohio–324, ¶ 14, quoting *Rhodes v. Firestone Tire & Rubber Co.,* 10th Dist. Franklin No. 08AP–314, 2008–Ohio–4898, ¶ 11. "Opinions expressed with a lesser degree of certainty must be excluded as speculative." *Shumaker* at 369, 504 N.E.2d 44.

{¶ 16} On appeal, Leasure argues that the trial court erred when it denied her request to add lumbar spondylosis to her 1982 worker's compensation claim. At trial, Leasure's expert, Dr. Paley, testified that her lumbar spondylosis was caused by a "flow-through" condition from her 1982 injury. A "flow through" injury is generally defined as an injury that subsequently develops in a body part not originally alleged under R.C. 4123.84(A)(1). *Click v. S. Ohio Corr. Facility,* 152 Ohio App.3d 560, 2003–Ohio–2208, 789 N.E.2d 643, ¶ 9 (4th Dist.), citing *Dent v. AT & T Technologies, Inc.,* 38 Ohio St.3d 187, 527 N.E.2d 821 (1988). Whether a flow through injury is compensable depends on the existence of a direct or proximate causal relationship between the previously allowed injury and the claimant's flow through injury. *Kenyon v. Scott Fetzer Co.,* 113 Ohio App.3d 264, 266, 680 N.E.2d 1034 (8th Dist.1996). Specifically, Dr. Paley testified that because of the injuries to Leasure's right knee (and its eventual replacement) which were caused

by the 1982 fall, this resulted in her developing a limp.

{¶ 17} However, Dr. Hogya testified that medical research has not established a causal link between a limp and the onset of lumbar spondylosis. Dr. Hogya further testified as follows during his direct examination:

Q: *** And what is your opinion about whether or not the Plaintiff has sustained lumbar spondylosis as a result of a slip and fall at work on February 1, 1982?

A: My opinion is that the lumbar spondylosis was not the result of that injury, February 1, 1982.

Q: She has lumbar spondylosis, correct?

A: Correct.

Q: Okay. Why don't you just walk us through your analysis and explain to the Court how it is that you arrived at that opinion.

A: Well, it's 28 years after the injury and she's 59 years old and significantly obese. So, those findings are what you would see, *it's just natural degeneration or aging of the spine over that many years.* And then the other issue was this – if it was flow-through or, again, like I said, a secondary effect to her primary injuries.

Q: Uh-huh.

A: And, I mean, that goes to what I was mentioning about the hip.

Q: Okay.

A: So, she did have changes within that hip and there were diagnoses for that, as part of the [original 1982] injury.

Q: Uh-huh.

A: But there was no evidence that the spinal changes [lumbar spondylosis] were a result of that. Which we covered that to some degree. The other factor is that she really hadn't done anything that physical since '83, in terms of work. *So, if you're postulating that it was the stress from her underlying limping on* [the right] *side, we'd have to establish what the particular stress was as compared to just natural degeneration time. So, if you're not an active person, you're not working over that many of years* [sic]*, just routine activities of daily living, which were still limited, it's hard to postulate that that, in and of itself, caused that on flow-through basis.*

Q: Let me just make sure I ask this question directly. *Did Janet Leasure's limp, on her right leg, cause her to develop her lumbar spondylosis?*

A: *In my opinion, no.*

{¶ 18} Conversely, Dr. Paley did not explain how the stresses or forces from a limp could cause lumbar spondylosis. Dr. Paley merely concluded that Leasure has "developed these problems with her right side and *that translates to right-sided low back pain.*" Rather than explain how he reached this conclusion, Dr. Paley simply asserted that there is a causal relationship between Leasure's limp and her lumbar spondylosis. As noted by the trial court in its decision Dr. Paley failed to explain how the stress or forces from a limp could cause lumber spondylosis. At trial, Dr. Paley testified as follows regarding the causal relationship between Leasure's right-leg limp and her lumbar spondylosis:

I don't think that's purely serendipitous that we get an MRI [Magnetic Resonance Imaging] of somebody who has injured their right side convincingly, has had multiple knee surgeries on the right side, and now we find that she has right low back arthritis [lumber spondylosis]. So I don't think that there's anything just happenstance about that. I think it's all part and parcel of the same disease process stemming from the same injury from '82.

{¶ 19} Significantly, when treating Leasure in 2003, Dr. Paley previously suggested that her lumbar spondylosis was not a flow-through condition caused by her right-leg limp. Rather, Dr. Paley indicated in a 2003 report that he believed Leasure's lumbar spondylosis was caused by aggravation of a pre-existing problem, and alternatively that it was directly caused by the 1982 slip and fall. Not only are aggravation of a pre-existing condition and direct causation mutually exclusive theories, but both theories also contradict his current theory that Leasure's lumbar spondylosis is a flow-through condition caused by her right-leg limp. More importantly, x-rays taken just after the date of injury in 1982 establish that Leasure did not have lumbar spondylosis at that time. Furthermore, the trial court found Dr. Paley's flow-through theory of causation to be unpersuasive.

{¶ 20} We also note that medical records entered in to evidence at trial establish that Leasure did not complain of back pain from 2004 through 2009. In late July of 2009, Dr. Paley, who was treating Leasure at the time, diagnosed her with piriformis syndrome, a condition which causes sciatic pain, that is, pain in the lower back region. At the same time, Dr. Paley also diagnosed her posterior superior iliac spine tendonitis, a condition

which affects the muscles which attach to the pelvis. Both of these conditions were added to Leasure's 1982 worker's compensation claim. Furthermore, both Dr. Paley and Dr. Hogya testified that piriformis syndrome and superior iliac spine tendonitis are serious conditions which can cause severe back pain.

{¶ 21} Lastly, Leasure argues that she should be entitled to worker's compensation benefits for lumbar spondylosis under the theory of dual causation. "It is a well-established principle of tort law that an injury may have more than one proximate cause. See Prosser and Keeton, Law of Torts (5 Ed.1984) 266-268, Section 41; 2 Restatement of the Law 2d, Torts (1965) 432, Section 433; 1B Larson, Law of Workers' Compensation (1991) 7-612 to 7-941, Section 41.64; 1 Ohio Jury Instructions (1988) 183, Section 11.10 ('There may be more than one proximate cause.'). Ohio case law also supports this fundamental tenet of tort law: 'In Ohio, when two factors combine to produce damage or illness, each is a proximate cause.' " *Murphy v. Carrollton Manufacturing Company,* 61 Ohio St.3d 585, 587-588, 575 N.E.2d 828 (1991); *Plaster v. Elbeco, Inc.*, 3d Dist. Crawford No. 3-07-06, 2007-Ohio-5623, ¶ 22 (dual causation requires evidence of two or more proximate causes of injury).

{¶ 22} Leasure argued that her lumbar spondylosis is a flow-through condition caused by her right-leg limp which was caused by her fall in 1982. Dual causation would only be applicable in the instant case if Leasure established that her non-work related health problems associated with her obesity and advanced age as well as her 1982 work injury were both separate and independent causes of her lumbar spondylosis. At trial, evidence was adduced which supported only two alternative theories of causation for Leasure's lumbar spondylosis, to wit: flow-through *or* natural deterioration. The theory

of dual causation is simply not supported by the record. As found by the trial court, the evidence adduced at trial established only one cause, to wit: natural deterioration brought on by Leasure's increasing age and chronic obesity.

{¶ 23} Upon review, it is clear that the trial court found Dr. Hogya's testimony regarding natural deterioration more credible than Dr. Paley's flow-through analysis as a basis for Leasure's lumbar spondylosis. Therefore, we conclude that the trial court's decision denying Leasure's request to add lumbar spondylosis to her 1982 worker's compensation claim was not against the manifest weight of the evidence.

{¶ 24} Leasure's sole assignment of error is overruled.

{¶ 25} Leasure's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

Dennis A. Becker
Douglas S. Jenks
Gary W. Auman
Eric J. Tarbox
Hon. Christopher Gee