[Cite as *Harrison v. Panera, L.L.C.*, 2013-Ohio-5338.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

ORLANDO D. HARRISON                     :

      Plaintiff-Appellee                          :       C.A. CASE NO.    25626

v.                                                      :       T.C. NO.    11CV9021

PANERA, L.L.C.                                :          (Civil appeal from
                                                                 Common Pleas Court)

      Defendant-Appellant                     :

                                                        :

. . . . . . . . . .

# O P I N I O N

Rendered on the _____6th_____ day of _____December_____, 2013.

. . . . . . . . . .

MARK B. WEISSER, Atty. Reg. No. 0023676, 600 Vine Street, Suite 1920, Cincinnati,
Ohio 45202
      Attorney for Plaintiff-Appellee

CHRISTOPHER R. WALSH, Atty. Reg. No. 0065257, 136 W. Mound Street, Columbus,
Ohio 43215
      Attorney for Defendant-Appellant

CORINNA V. EFKEMAN, Atty. Reg. No. 0069363, Assistant Attorney General, Workers'
Compensation Section, 150 East Gay Street, 22nd Floor, Columbus, Ohio 43215
      Attorney for Bureau of Workers' Compensation

. . . . . . . . . .

FROELICH, J.

{¶ 1} Panera, L.L.C., appeals from a judgment of the Montgomery County Court of Common Pleas, which found that Panera's employee, Orlando D. Harrison, was eligible to participate in the Workers' Compensation Fund for aggravation of a pre-existing condition (arthritis) and for impingement, both related to Harrison's right shoulder.

{¶ 2} Harrison has been a truck driver for Panera since 2006; he delivers baked goods to Panera restaurants in southwest Ohio. On February 9, 2011, while unloading a fully-stocked bagel cabinet from a truck, Harrison suffered an injury when the cabinet tipped and he caught it with his shoulder. Harrison finished work that day and then reported the incident to his supervisors. The following day, Harrison visited an urgent care to have his shoulder evaluated. He was referred to an orthopedic physician.

{¶ 3} Panera, a self-insured employer, initially accepted Harrison's claim for a "sprain/strain" of his right shoulder. Harrison subsequently sought additional allowances for substantial aggravation of pre-existing arthritis and impingement syndrome in his right shoulder. Panera denied these claims. When Harrison appealed, district hearing officers denied his claim for substantial aggravation of a pre-existing condition, but allowed his claim for impingement. However, upon further administrative appeal, staff hearing officers denied both claims. Harrison appealed to the Industrial Commission, which also denied his claims, and then to the Montgomery County Court of Common Pleas.

{¶ 4} The trial court conducted a bench trial on January 18, 2013. The evidence presented at the trial consisted of Harrison's testimony and the testimony of two experts: Dr. Kevin Shaw for Harrison and Dr. Michael Rozen for Panera. The doctors offered conflicting opinions about whether Harrison had suffered a substantial aggravation of his

pre-existing condition; they also differed about what constitutes objective evidence of such aggravation, which is required under workers' compensation laws. The experts further disagreed about whether the impingement syndrome was related to the 2011 accident.

{¶ 5} Harrison, age 42, testified that he had worked for Panera since 2006 and had filed no prior workers' compensation claims. He described that, in April 2010, he had suffered a minor injury to his right shoulder while working for Panera, but he testified that, although he had x-rays taken, he had not required treatment, medication, or absence from work for that injury, and he suffered no ongoing pain or range of motion problems after that injury, until the incident in February 2011.

{¶ 6} On February 9, 2011, when Harrison was unloading a heavy bagel cabinet from a truck, it "came down so fast and hard" that he could not control it. The cabinet "went back on [him]" and he "felt a pop or * * * heard a pop. [He] just felt something different that day than normal" in his shoulder. Harrison had been afraid that the cabinet was going to fall on his leg, so he held it up with his shoulder while he called for help. He felt pain immediately, but he finished his route for the day and reported the incident to his supervisors when he returned the truck. Harrison also worked the next day, but he continued to feel that his pain was "not normal," and he sought treatment at an urgent care preferred by Panera after work on the day after the accident. The urgent care took x-rays and referred Harrison to an orthopedic doctor, Dr. Shaw.

{¶ 7} Dr. Shaw testified that he first saw Harrison on February 11, 2011. Dr. Shaw conducted a physical exam, took Harrison off of work, prescribed medicine, and ordered physical therapy for two months. Harrison was off work until March 3, when he

was permitted to return with some restrictions. Dr. Shaw wanted to perform an MRI, but Panera refused to pay for it. (An MRI was later conducted after Harrison appealed Panera's refusal to allow the test to the Industrial Commission.)

{¶ 8} At trial, Dr. Shaw testified to the results of his physical examination of Harrison on February 11. Dr. Shaw stated that Harrison's left arm was fine, but the front and back of his right shoulder exhibited tenderness. Harrison could not lift his right arm over his head or around his back without sharp pain, and he exhibited weakness in raising his arm to the front or side. Harrison reported to Dr. Shaw that he had a full range of motion prior to the accident.

{¶ 9} Dr. Shaw testified that the x-rays taken at the urgent care center revealed that Harrison had arthritis in his shoulder, but the joint was in place and there was no fracture. Because "[t]here would be no way for arthritis to develop in two days," Dr. Shaw viewed it as a pre-existing condition. When Dr. Shaw compared Harrison's 2010 x-rays with the 2011 x-rays, he concluded that the arthritis was "pretty stable," because there was no significant change.

{¶ 10} Dr. Shaw diagnosed Harrison with arthritis and impingement. Dr. Shaw concluded that the trauma of February 9 had substantially aggravated Harrison's pre-existing arthritis and had directly caused the impingement.

{¶ 11} The MRI was performed in January 2013. According to Dr. Shaw, it revealed "severe" tendonitis around Harrison's biceps, a tendon injury of one of the rotator cuff muscles, and a "near full thickness tearing" where the tendon attached to the bone. Dr. Shaw also observed "some displacement of the shoulder to the back or posterior," which he

attributed to the "ongoing arthritis."

{¶ 12}    Dr. Shaw characterized the x-rays and MRI as objective findings.   He also testified that, during a physical exam, including a range of motion test, he has "fairly objective" measures of a patient's condition, as well as relying, to some extent, on the patient's account of what he is experiencing or feeling.   For example, Dr. Shaw stated that he can tell if a patient is experiencing stiffness: "I've done this enough where I can get people distracted and move their shoulder without them realizing I'm doing more than they think I'm doing.   So I can pick up on stiffness if it's real.   I know when someone's actively contracting their shoulder against me."

{¶ 13}    Regarding the diagnosis of impingement, Dr. Shaw explained that impingement is an inflamation or structural breakdown of a tendon caused by strain, stretch, overuse, and pressure of the rotator cuff on the acromion bone.   He stated that such an injury can happen acutely or over time, but that arthritis is unrelated to impingement.   Dr. Shaw stated that "a Neer's test or a Hawkins test"[1] is "to bring out impingement."   This test involves a "clinical diagnosis" based on history and a physical exam.   Dr. Shaw acknowledged, however, that his diagnosis of impingement caused by the February 2011 accident was based in part on Harrison's report that he had had no pain prior to that date.

{¶ 14}    Dr. Shaw concluded that Harrison's arthritis had been substantially aggravated by the accident and that the impingement had been caused by the accident.   He also stated that he had relied on objective as well as subjective factors in reaching these

---

[1] In the transcript, these tests are also referred to as two separate but similar tests, or as  a "Neer and Hawkings test" or "Neers and Hawkins test."

diagnoses.

{¶ 15}    At the time of trial, Harrison continued to take anti-inflammatory and pain medicines prescribed by Dr. Shaw.

{¶ 16}    Dr. Michael Rozen testified for Panera.  He relied on his review of Harrison's medical records and his examination of Harrison in March 2013.  Dr. Rozen stated that, in his opinion, pain is subjective, and a range of motion test cannot be used as an objective measure of injury unless it has been done multiple times to allow for comparison. "If you have multiple examiners over a period of time or you over a period of time reproduce that exact range of motion, then I would lean toward it being an objective finding. Otherwise it's a subjective finding and while we can do distraction testing and other things, it remains a subjective finding."  Dr. Rozen further stated that, in his view, a range of motion evaluation "is not a consistent objective physical finding.  There are times I will view it as an objective finding but generally I need support to make that happen.  * * * In my hand, I would view it as an objective finding.  * * * But in somebody else's hand, I would not."

{¶ 17}    Because Harrison's arthritis predated the accident, as evidenced by the 2010 and 2011 x-rays, Dr. Rozen concluded that there were no objective findings to support the conclusion that Harrison's condition had worsened or that the accident had caused a significant aggravation.  Dr. Rozen rejected Dr. Shaw's view that a range of motion test could constitute objective evidence of injury, because it was based on the patient's subjective reporting of his pain or discomfort, notwithstanding his own somewhat inconsistent statements on this issue.

{¶ 18}   With respect to impingement, Dr. Rozen testified that arthritis is a potential cause of impingement, as are bone spurs.   Based on the 2010 x-rays, Dr. Rozen stated that Harrison had arthritis and bone spurs in his right shoulder prior to the accident, which could have caused the impingement.   Dr. Rozen testified that the "radiological and clinical evidence," namely the 2010 x-rays, supported a diagnosis of impingement in 2010.   He also stated that there "appear[ed]" to be a positive Neer's and Hawkins test in 2010, but "it's difficult to read the handwriting" and "they did not report any crepitance."[2]   There was no evidence that any physician explicitly diagnosed Harrison with impingement in 2010, although it was undisputed that the Neer's and Hawkins test is used in making such a diagnosis.

{¶ 19}   Based on the evidence presented, the trial court concluded that Harrison was entitled to participate in workers' compensation for both conditions: aggravation of a pre-existing arthritis and impingement.

{¶ 20}   Panera appeals from the judgment of the trial court, raising several arguments.   The brief contains multiple formulations of the "issues " and "assignments of error."   We will paraphrase these statements and organize them in a manner that facilitates our discussion.

*Substantial Aggravation of a Pre-existing Condition (Arthritis)*

{¶ 21}  We begin with Panera's arguments related to the allowance of Harrison's claim for substantial aggravation of a pre-existing condition.   Panera contends that Ohio law no longer permits the participation in the workers' compensation fund for a pre-existing

---

[2]Dr. Rozen did not define "crepitance" or explain its significance to a Neer's and Hawkins test.

condition unless there is *objective* evidence of a *substantial* aggravation of that pre-existing condition, and that such evidence did not exist in this case.

{¶ 22}    Panera argues that R.C. 4123.01 requires objective evidence of substantial aggravation when an employee seeks coverage related to a pre-existing condition.   While conceding there was testimony about a substantial aggravation, Panera claims that Harrison did not meet the required standard because his evidence of substantial aggravation of his arthritis was not objective.

{¶ 23}    A claimant must establish an injury to participate in Ohio's workers' compensation system. *Schell v. Globe Trucking, Inc.,* 48 Ohio St.3d 1, 2, 548 N.E.2d 920 (1990).   "'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C).   The statute also specifically excludes some categories of injuries.   R.C. 4123.01(C)(4) excludes from the definition of injury

> [a] condition that pre-existed an injury unless that pre-existing condition is substantially aggravated by the injury.   Such a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results.   Subjective complaints may be evidence of such a substantial aggravation.   However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation.

Although subjective complaints are insufficient, standing alone, to establish a substantial aggravation, they may be coupled with objective diagnostic findings, objective clinical

findings, or objective test results to satisfy the standard. *Brate v. Rolls-Royce Energy Sys., Inc.*, 5th Dist. Knox No. 12CA000001, 2012-Ohio-4577, ¶ 16.

{¶ 24} By necessity, the wording of the statute requires an analysis of the expert testimony presented in each case. *Id.* at ¶ 24.

{¶ 25} Panera contends that Harrison presented no objective evidence of a substantial aggravation of his pre-existing condition. The trial court did not elaborate on its implicit conclusions that Harrison's arthritis had been substantially aggravated by the accident or that there had been objective evidence of this fact.

{¶ 26} Weight and credibility of evidence, and factual disputes in the testimony, are matters for the trial court to resolve. *Goldsboro v. Goldsboro*, 2d Dist. Miami No. 2006-CA-46, 2007-Ohio-2135, ¶ 32; *Gartin v. Gartin,* 2d Dist. Clark No. 2011-CA-74, 2012-Ohio-2232, ¶ 7. An appellate court will not reverse a factual determination unless the trial court has abused its discretion by acting in a manner that is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 27} Dr. Shaw testified that he considered Harrison's reports of pain or discomfort while conducting range of motion tests, but that he (Dr. Shaw) also was able to feel the stiffness of Harrison's tissues in resistance to certain motions. He stated that, as a regular part of such examinations, he distracts the patient so that he or she is not focused on the motions or manipulations that the doctor is performing, and compares such observations to the patient's reported discomfort. Dr. Shaw's observations and awareness of stiffness during Harrison's range of motion tests were consistent with the pain Harrison reported and with the diagnosis. In addition, Dr. Shaw relied on Harrison's statements regarding his pain

at the time of the examination and his reported lack of pain prior to the accident.

{¶ 28}    Further, when he compared Harrison's 2010 and 2011 x-rays, Dr. Shaw stated that he found the arthritis to be "stable," meaning that it did not appear to have worsened.  Dr. Shaw's conclusion that the x-rays taken two days after the accident did not show progression of the arthritis supported his conclusion that the aggravation of Harrison's arthritis had been caused by the accident, rather than by chronic deterioration.  Dr. Shaw characterized this evidence as "objective."

{¶ 29}    Harrison also testified that he had experienced no pain in his shoulder prior to the February 9 accident.

{¶ 30}    Based on this evidence, the trial court could have reasonably concluded that there were objective diagnostic findings of substantial aggravation of Harrison's arthritis.

{¶ 31}    The trial court was permitted to consider objective, as well as subjective, evidence of the aggravation of Harrison's pre-existing condition, but there had to be *some* objective evidence.   R.C. 4123.01(C). To the extent that the parties disputed what constitutes "objective" evidence and, in particular, whether range of motion tests can constitute objective evidence, the trial court was also required to resolve that issue.  We cannot conclude that the trial court abused its discretion in concluding that there was objective evidence, through Dr. Shaw's physical examination and the x-rays, that Harrison's arthritis had been substantially aggravated by the accident.  Even Dr. Rozen seemed to concede that a range of motion evaluation is an objective finding if "in my hand." Moreover, there is no evidence on the record before us, that the trial court misunderstood the

requirements of R.C. 4123.01(C)(4) or misapplied it.

*Impingement Syndrome*

**{¶ 32}** Panera also contends that the evidence did not establish that Harrison suffered from impingement syndrome as a result of the 2011 accident, and that the trial court's determination to allow this claim was against the manifest weight of the evidence.

**{¶ 33}** With respect to impingement syndrome, Panera contends that the court "arbitrarily ignored" Dr. Shaw's testimony that "the April 2010 x-rays would support a finding of impingement syndrome" and erred in not crediting Dr. Rozen's testimony that impingement had been present in 2010. According to Panera, this testimony precludes the conclusion that impingement was caused by the 2011 accident.

**{¶ 34}** A careful review of Dr. Shaw's testimony undercuts Panera's argument. Although Dr. Shaw did testify that the 2010 x-rays "would be supportive" of a finding of impingement, that statement was immediately followed by the following testimony:

I don't want to say that impingement is diagnosed on x-ray. It really isn't. It's much more of a what we call clinical diagnosis than anything else * * *, the history and physical exam. I really don't care about the x-ray that much when I'm dealing with impingement.

**{¶ 35}** Further, Dr. Shaw repeatedly testified to his conclusion that Harrison "developed impingement syndrome secondary to the injury" or that it was "directly caused" by the 2011 injury. In its cross-examination of Dr. Shaw, Panera's attorney acknowledged that Dr. Shaw "disagree[d]" that impingement pre-existed the 2011 injury. Thus, Panera's contention that Dr. Shaw agreed with Dr. Rozen's conclusion that the impingement predated

the accident is not supported by the record.   The trial court's decision to believe Dr. Shaw's testimony on this issue, rather than Dr. Rozen's, did not result in a judgment that was against the manifest weight of the evidence.

{¶ 36}    The assignments of error are overruled.

{¶ 37}    The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, P.J. and DONOVAN, J., concur.

Copies mailed to:

Mark B. Weisser
Christopher R. Walsh
Corinna V. Efkeman
Hon. Timothy N. O'Connell