[Cite as *Woods v. Bur. of Workers' Comp.*, 2016-Ohio-237.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| WILLARD K. WOODS, JR. | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26561 |
| | : | |
| v. | : | Trial Court Case No. 2013-CV-3514 |
| | : | |
| BUREAU OF WORKERS' | : | (Civil Appeal from |
| COMPENSATION, et al. | : | Common Pleas Court) |
| | : | |
| *Defendants-Appellants* | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of January, 2016.

. . . . . . . . . . .

GARY D. PLUNKETT, Atty. Reg. No. 0046805, BRETT BISSONNETTE, Atty. Reg. No. 0076527, 3033 Kettering Boulevard, Suite 201, Dayton, Ohio 45439
  Attorneys for Plaintiff-Appellee

SHAUN OMEN, Atty. Reg. No. 0083411, 150 East Gay Street, 22nd Floor, Columbus, Ohio 43215
  Attorney for Defendant-Appellant-Administrator, Ohio Bureau of Workers' Compensation

SHAWN W. MAESTLE, Atty. Reg. No. 0063779, DEIRDRE G. HENRY, Atty. Reg. No. 0017483, 1301 East Ninth Street Suite 1900, Cleveland, Ohio 44114
  Attorneys for Defendant-Appellant-Dayton-Phoenix Group, Inc.

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Defendant-Appellants, Stephen Buehrer, Administrator, Bureau of Workers' Compensation ("Bureau") and Dayton-Phoenix Group, Inc. ("Phoenix") appeal from a judgment in favor of Plaintiff-Appellee, Willard Woods. In support of their appeals, the Bureau and Phoenix submit a total of seven assignments of error.

{¶ 2} These assignments of error challenge the court's admission of certain medical evidence, a jury instruction on pre-existing conditions, and whether the judgment that Woods' workplace injury substantially aggravated a preexisting condition was based on sufficient evidence or was against the manifest weight of the evidence.

{¶ 3} We conclude that the judgment of the trial court was supported by sufficient evidence and was not against the manifest weight of the evidence. Furthermore, even though the trial court erred in admitting hearsay evidence, the error was not prejudicial. The trial court did not err in instructing the jury. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 4} On June 18, 2012, Willard Woods was employed as a welder by Phoenix, which manufactures locomotive parts. During the course of a typical day, Woods welded multiple parts together to construct fan frames. While doing so, Woods wore a welding helmet, which was constructed so that it could stay up when Woods was not welding, and could fall into place to shield his face and eyes through a flick of his head. Sometimes Woods used his hands to lower the helmet, but when his hands were not free, he "flicked" his head to lower the helmet. This was more like a heavy nod, and Woods had done this

action about 100 times per day, or about 1,000 times per week, for the seven years he worked at Phoenix. He had also worked at another location as a welder prior to working for Phoenix.

{¶ 5} On June 18, 2012, Woods flicked his helmet down and felt some pain in his neck. He had never had any neck pain prior to that time, and had never consulted a physician for neck problems. The pain was not so severe that he had to stop working, and felt like when he had bumped a shin or elbow and had to deal with the pain until it went away. After a few minutes, Woods resumed work. He did not seek medical treatment at that time, nor did he report the accident to his employer.

{¶ 6} That night, Woods was awakened because his left arm went numb. This had never happened before. Two of his fingers tingled, and he had pain from the left side of his neck all the way down his arm to his fingers. Woods went to work the next day, but the pain in his neck and arm did not go away. He continued to have difficulty sleeping on his left side, and consulted Dr. Black, whom he had seen previously for a lower back issue. He treated with Dr. Black for six or seven months, after which the numbness and pain in his left arm had subsided. However, Woods continued to have problems with his neck. He still experienced pain when turning his neck and had aching pain.

{¶ 7} Dr. Black sent Woods for an MRI, and also referred him to Dr. West, who was a neurosurgeon. Dr. West saw Woods in March 2013, and conducted a physical examination. Dr. West also reviewed MRI films of Woods' cervical spine. The films indicated to West that Woods had two herniated discs at the C5-6 and C6-7 levels and some degeneration of those discs. According to Dr. West, these discs are at the lowest

part of the neck and are the discs most susceptible to a flexion type of injury.

{¶ 8} Because the herniated discs were not bothering Woods much at the time of the examination, Dr. West concluded that Woods did not need surgery and should continue conservative care with Dr. Black. Dr. West stated that the problem would not get better by itself.

{¶ 9} The Bureau originally approved Woods' claim for a neck sprain, but rejected his claim for substantial aggravation of a preexisting condition – disc protrusion and disc herniation at the C5-6 and C6-7 levels. After exhausting appeals at the Bureau, Woods appealed to the common pleas court in June 2013. A jury trial was held in September 2014, after which the jury rejected Woods' claim for disc herniation at C5-6 and C6-7. However, the jury also found that Woods was entitled to participate in the workers' compensation system for the condition of substantial aggravation of C5-6 and C6-7 disc herniation. The trial court entered judgment on the verdicts, and also subsequently overruled motions for judgment notwithstanding the verdict ("JNOV") filed by the Bureau and Phoenix.

{¶ 10} The Bureau and Phoenix appealed from the judgment of the trial court. We briefly remanded the case so that the trial court could clarify whether it intended to make a September 15, 2014 email to the parties part of the record. On remand, the trial court concluded that the email should be part of the record, and the record was supplemented accordingly. The case was returned to the court of appeals and is now ready for consideration.

II. Substantial Aggravation Verdict

{¶ 11} Phoenix's First and Fourth Assignments of Error are similar, and will be

considered together.   These assignments of error state that:

The Trial Court Erred When It Denied Phoenix's Motion for a Directed Verdict on Woods' Aggravation of a Pre-Existing Condition Claim Since No Competent Evidence Was Presented Establishing that There Was a Pre-Existing Herniation.

The Jury's Verdict Is Not Supported by Legally Sufficient Evidence, and, Therefore, the Trial Court Erred in Failing to Issue a Judgment Notwithstanding the Verdict.

{¶ 12} These assignments of error are also similar to the Bureau's First and Second Assignments of Error, which state, respectively, that:

The Trial Court Erred in Denying the Defendant-Appellant's Motion for a Directed Verdict on the Issue of Substantial Aggravation of Preexisting Disc Herniation at C5-6 and 7.

The Trial Court Erred in Denying the Defendant-Appellant's Motion for Judgment Notwithstanding the Verdict.

{¶ 13} Under these assignments of error, the Bureau and Phoenix contend that the trial court should have granted their motions for directed verdict and for JNOV because Woods failed to present evidence that he suffered from a pre-existing disc herniation or that any pre-existing herniation was substantially aggravated by his 2012 workplace accident.   In contrast, Woods maintains that pre-existing disc degeneration combined with a later traumatic injury is legally sufficient to allow recovery for the resulting disc herniation.

{¶ 14} "The standard for granting a motion for j.n.o.v. is the same as that necessary

to sustain a motion for a directed verdict." (Citation omitted.) *Nickell v. Gonzalez*, 17 Ohio St.3d 136, 137, 477 N.E.2d 1145 (1985). In either situation, "[t]he evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." (Citations omitted.) *Posin v. A. B. C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976).

{¶ 15} " 'In order to establish a right to workmen's compensation for harm or disability claimed to have resulted from an accidental injury, it is necessary for the claimant to show by a preponderance of the evidence, medical or otherwise, not only that his injury arose out of and in the course of his employment but that a direct and proximate causal relationship existed between his injury and his harm or disability.' " *Cook v. Mayfield*, 45 Ohio St.3d 200, 204, 543 N.E.2d 787 (1989), quoting *Fox v. Indus. Comm.*, 162 Ohio St. 569, 125 N.E.2d 1 (1955), paragraph one of the syllabus.

{¶ 16} Under R.C. 4123.01(C), an injury for purposes of workers' compensation "includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." Under 4123.01(C)(4), "injury" does not include "[a] condition that pre-existed an injury unless that pre-existing condition is substantially aggravated by the injury." R.C. 4123.01(C)(4) further provides that:

Such a substantial aggravation must be documented by objective

diagnostic findings, objective clinical findings, or objective test results. Subjective complaints may be evidence of such a substantial aggravation. However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation.

{¶ 17} Subdivision (C)(4) was added to R.C. 4123.01 in 2006.   Prior to that time, the Supreme Court of Ohio had held that claimants were not required to prove that an aggravation was substantial in order to recover.   *See Pflanz v. Pilkington LOF*, 1st Dist. Hamilton No. C-100574, 2011-Ohio-2670, ¶ 13, citing *Schell v. Globe Trucking, Inc.*, 48 Ohio St.3d 1, 548 N.E.2d 920 (1990).   In *Pflanz*, the court concluded that as a result of the amendment, "to be compensable, the aggravation of a preexisting condition must be substantial both in the sense of being considerable and in the sense of being firmly established through the presentation of objective evidence."   *Id.* at ¶ 18.   However, the fact that the trier of fact finds one expert's testimony more compelling than that of a contradictory expert does not mean that the evidence does not support a finding of substantial aggravation.   *Id.* at ¶ 22 (concluding that the trial court did not err in finding substantial aggravation; the court simply found one doctor's testimony more compelling).

{¶ 18} In this case, when the trial court rejected the motions for JNOV, it relied on *Plaster v. Elbeco, Inc.*, 3d Dist. Crawford No. 3-07-06, 2007-Ohio-5623, which the court found to have involved "remarkably similar" issues.   Decision, Order and Entry Overruling Motions for Judgment Notwithstanding the Verdict, Doc. #95, p. 3.   In *Plaster,* the court of appeals affirmed the verdict of a jury, which found that the plaintiff was entitled to recover for an additional condition of a herniated disc at C6-7.   *Id.* at ¶ 3.

**{¶ 19}** The court of appeals concluded in *Plaster* that an instruction on aggravation of a pre-existing condition was supported by the evidence. *Id.* at ¶ 7 and 18-21. In this regard, the court noted the following evidence:

Plaster contends that Dr. Gordon Kaplan gave an opinion on aggravation. Specifically, Plaster argues that Dr. Kaplan indicated that Plaster suffered the pre-existing condition of degenerative disc disease. On cross-examination, Dr. Kaplan opined it is possible that a repetitive trauma could aggravate a pre-existing condition, such as degenerative disc disease. Plaster also relies on the expert testimony of Dr. Chopko, who opined that Plaster had a history of degenerative disc disease, which was exacerbated by the work Plaster performed at Elbeco. Furthermore, Plaster contends that both doctors cited various causes of a herniated disc, such as natural aging, degeneration, trauma, and repetitive trauma. Plaster contends that this evidence supports the court's instruction on dual causation.

*Id.* at ¶ 7.

**{¶ 20}** After reviewing the evidence, the court of appeals agreed with the plaintiff that the evidence supported an instruction on aggravation, which included testimony from plaintiff's expert that "a herniated disk may be caused by degenerative disease and trauma, including repetitive trauma." *Id.* at ¶ 18. The court also stressed that the aggravation claim was not precluded by authority prohibiting claimants from recovering on "new conditions" that were not presented at the administrative level. *Id.* at ¶ 14-15, discussing *Ward v. Kroger*, 106 Ohio St.3d 35, 2005-Ohio-3560, 830 N.E.2d 1155, and *Davidson v. Bur. Of Workers' Compensation*, 2d Dist. Montgomery No. 21731, 2007-

Ohio-792.

{¶ 21} In this regard, the court of appeals observed that the plaintiff was not advancing a new condition. Specifically, the court said that:

In this case, the condition claimed was not aggravation of degenerative disc disease. The only claimed condition was a herniated disc, which both experts agreed was the diagnosis. How that disc became herniated was the issue, specifically, whether the disc was herniated in the course of Plaster's employment. Whether the disc herniated as a direct and proximate cause of her work, or whether the disc herniated because her work aggravated the pre-existing condition of degenerative disc disease, the resulting condition is the same, and that sole resulting condition is the basis of Plaster's claim.

*Plaster*, 3d Dist. Crawford No. 3-07-06, 2007-Ohio-5623, at ¶ 15.

{¶ 22} Similarly, in the case before us, the herniated disc is the resulting condition which forms the basis of Woods' claim, and the cause—whether it directly resulted from the trauma or substantially aggravated a pre-existing condition—is the issue. The Bureau and Phoenix, therefore, are applying an incorrect analysis when they insist that Woods cannot recover because his disc herniation did not exist before the accident. This is not a requirement. As is evident from the case law and the testimony at trial, the resulting condition is the disc herniation, and it can be caused by substantial aggravation of a pre-existing condition of degenerative disc disease.

{¶ 23} Phoenix contends that *Plaster*, as well as other cases cited by Woods, have no merit because they were decided before R.C. 4123.01(C)(4) was amended in 2006

and "dramatically changed evidentiary requirements for substantial aggravation theory injuries." Phoenix Reply Brief, p. 4. The Bureau also asserts that the standard in *Plaster* is obsolete. While the amendment did add a requirement that pre-existing conditions must be substantially aggravated by an injury and that substantial aggravation must be documented by objective diagnostic findings, this does not mean that *Plaster* is obsolete. *See* R.C. 4123.01(C)(4), as amended by Am.Sub.S.B. 7, 2006 Ohio Laws File 87.

{¶ 24} In a decision occurring well after the 2006 amendments, the Supreme Court of Ohio cited *Plaster*, among other cases, in a manner indicating that the court agreed with the decision. *See Starkey v. Builders FirstSource Ohio Valley, L.L.C.*, 130 Ohio St.3d 114, 2011-Ohio-3278, 956 N.E.2d 267.

{¶ 25} When *Plaster* was decided, the Supreme Court of Ohio had not yet answered a question left open in *Ward*, i.e., " 'whether a claim for a certain condition by way of direct causation must necessarily include a claim for aggravation of that condition for purposes of either R.C. 4123.512 or res judicata.' " *Starkey* at ¶ 1, quoting *Ward,* 106 Ohio St.3d 35, 2005-Ohio-3560, 830 N.E.2d 1155, at ¶ 15, fn. 1. After analyzing the pertinent matters, including the fact that hearing officers at the administrative level are not limited to the type of causation that claimants may argue, the Supreme Court of Ohio held that:

> In applying the statutory requirements, we remain mindful that the workers' compensation statutes should be liberally construed in favor of employees. R.C. 4123.95. The ultimate question in a workers' compensation appeal is the claimant's right to participate in the fund for an

injury received in the course of, and arising out of, the claimant's employment. As long as the injury has a causal connection—whether direct or aggravated—to the claimant's employment, the claimant is entitled to benefits.

We therefore agree with the courts that have held that a claimant is not required to advance a specific theory of causation at the administrative level if he or she wishes to use that theory in the trial court, because R.C. 4123.512 allows for introduction of new evidence, provided that it relates to the same medical condition or injury. *McManus v. Eaton Corp.* (May 16, 1988), 5th Dist. No. CA-7346, 1988 WL 48598 (aggravation of a previously ruptured disc is not a different injury from a ruptured disc); *Plaster v. Elbeco, Inc.*, 3d Dist. No. 3-07-06, 2007-Ohio-5623, 2007 WL 3052773 (causation of disc herniation was not a new condition); *Bright v. E. & C. Lyons* (Sept. 30, 1993), 11th Dist. No. 93-G-1753, 1993 WL 407361 (the evidence is admissible when new theory of recovery is offered to advance new theory of causation, not new injury); *Torres v. Gen. Motors Corp., C.P.C. Group* (Nov. 21, 1991), 8th Dist. No. 59122, 1991 WL 243632 (consideration of aggravation was proper when a single disc injury was claimed); *Robinson v. AT & T Network Sys.*, 10th Dist. No. 02AP-807, 2003-Ohio-1513, 2003 WL 1563856, ¶ 16 ("advancing a new theory of causation is not tantamount to trying to prove a new injury").

*Starkey* at ¶ 17-18.

{¶ 26} While the Supreme Court of Ohio did not directly address the result in

*Plaster*, it is unlikely the court would have cited the case if it felt it no longer had merit after the 2006 amendment. In addition, the court clearly approved of the analysis used in *Plaster,* i.e., that "the decision for the common pleas court is the claimant's right to participate in the fund for a specific *injury*, not for a specific type of causation." (Emphasis sic.) *Id.* at ¶ 19. This is significant, because it indicates, contrary to the position of the Bureau and Phoenix, that the herniation did not have to exist prior to the injury; instead, the type of causation (the degenerative disc, which, in combination with the industrial trauma, resulted in the herniation), must have existed.

{¶ 27} The Bureau also attempts to distinguish *Plaster* because it allegedly focused on "repetitive trauma" combined with degenerative disc disease, whereas the case before us involves only one alleged incident of trauma. It is true that *Plaster* involved repetitive lifting of 50-plus pound bales. *Plaster*, 3d Dist. Crawford No. 3-07-06, 2007-Ohio-5623, at ¶ 18. However, the doctor's testimony in *Plaster* was that "a herniated disk may be caused by degenerative disease and trauma, *including* repetitive trauma." (Emphasis added.) *Id.* The doctor did not rule out other kinds of trauma, and Dr. West's testimony clearly indicated that disc herniation can be caused by even minor trauma. We also note that Woods had performed the action of flipping his helmet cover about 1,000 times per week for the seven years that he worked at Phoenix.

{¶ 28} After reviewing the evidence in the case before us, we agree with the trial court that the situation is similar to *Plaster*, even though there are some points of distinction, like the fact that Woods did raise aggravation at the administrative level (which is not relevant for purposes of our analysis). We also note that the Bureau and Phoenix have focused on certain statements in Dr. West's testimony, but have ignored parts of his

testimony that support a finding of substantial aggravation of a pre-existing condition.

{¶ 29} Specifically, Dr. West testified that discs are cushion pads between the bones in the neck, which allow people to bend and move their necks. Dr. West compared discs to sponges, and stated that disc degeneration is a drying out of the disc, which, like a sponge, loses water as it degenerates. Deposition of Dr. West, Doc. #32, pp. 10 and 24. According to Dr. West, Woods had pre-existing disc degeneration, which takes years to develop. *Id.* at pp. 19, 23-24 and 27-28. The MRI films, which Dr. West reviewed, showed both disc herniation in Woods' neck at the C5-6 and C6-7 levels and degeneration of those discs. *Id.* at p. 19. Dr. West described the degeneration as mild to moderate. *Id.* at 24.

{¶ 30} A disc herniation, which Dr. West stated is the same as a disc protrusion, occurs where some material becomes dislodged or herniated from its normal position and pinches exiting nerves. *Id.* at pp. 10 and 23. Typically, some type of trauma causes a disc to herniate. Often, a large amount of trauma is not required. In this regard, Dr. West stated that:

> Sometimes if the, if the disc is a little bit compromised or weakened, it could take a, a more trivial trauma. I've had people cough or sneeze or just roll over in bed, when you roll over, you put pressure down on your head. And you'd be amazed at how many people just rolling over in bed, putting pressure on their head to, to roll over will develop a disc herniation from something that trivial.

*Id.* at p. 11.

{¶ 31} Dr. West also indicated that a quick jerk of the neck downward could

herniate a disc. *Id.* at p. 12. With respect to his opinion about Woods' injury, Dr. West stated to a reasonable degree of medical certainty that:

> I feel that he had some underlying degeneration of those discs, but that it was his work injury when he forcefully hyperflexed his neck that caused the disc herniations, or substantially aggravated his preexisting condition.

Deposition of Dr. West, Doc. #32, pp. 26-27.

{¶ 32} In addition, Dr. West stated that "[t]he preexisting condition that was substantially aggravated" was "the degeneration or drying out of the discs that we talked about. I feel he did have some preexisting drying out of his discs, because they usually take years to develop. And with his age and line of work, I'm, I'm sure he had some. But I don't believe that he had a herniation until his work injury, because that's what causes radicular pain. That's what caused the pain to go down his arm. So, I feel that's what caused the herniation." *Id.* at p. 27.

{¶ 33} Dr. West went on to state that Woods had degenerative disc disease before his accident. In this regard, Dr. West said that:

> Right. I feel he had that [degenerative disc disease] before the accident.
>
> * * *
>
> Well, because degeneration takes years to develop. It's a, it's a, like we mentioned before, it can be an aging process or a, a result of years of physical work, the kind of work he did. That's just a gradual problem where the discs just lose some of their moisture. Typically those patients don't have any arm pain. So, I feel that he had that prior to the work injury.

* * *

The preexisting condition is the drying out or the degeneration of his discs. I feel that they were there probably for a number of years. He may have had some mild chronic neck pain from that condition. But then some traumatic event, in this case the forceful hyperflexion to drop his welder shield, I feel caused an aggravation or caused that condition to get worse, meaning it caused those weakened discs to now herniate out. That is a substantial aggravation.

Deposition of Dr. West, Doc. #32, pp. 27-28.

{¶ 34} Accordingly, under relevant authority, Woods presented substantial evidence to support his side of the case, upon which reasonable minds could reach different conclusions, and the trial court did not err in denying the motions for directed verdict or for JNOV. *Posin v. A. B. C. Motor Court Hotel, Inc.*, 45 Ohio St.2d at 275, 344 N.E.2d 334. It is true that the Bureau and Phoenix presented evidence from Dr. Wunder, who stated that the industrial accident did not cause the disc herniation. In fact, Dr. Wunder denied that a disc herniation existed. However, this simply means that reasonable minds could reach differing conclusions on the evidence. As was noted earlier, the trier of fact was not required to believe Dr. Wunder.

{¶ 35} After the amendment to R.C. 4123.01(C)(4), we noted that "[a]lthough subjective complaints are insufficient, standing alone, to establish a substantial aggravation, they may be coupled with objective diagnostic findings, objective clinical findings, or objective test results to satisfy the standard." (Citation omitted.) *Harrison v. Panera, L.L.C.*, 2d Dist. Montgomery No. 25626, 2013-Ohio-5338, ¶ 23, citing *Brate v.*

*Rolls–Royce Energy Sys., Inc.*, 5th Dist. Knox No. 12CA000001, 2012-Ohio-4577, at ¶ 16. We also stressed that "[b]y necessity, the wording of the statute requires an analysis of the expert testimony presented in each case." (Citation omitted.) *Id.* at ¶ 24, citing *Brate* at ¶ 24.

{¶ 36} In this case, Dr. West indicated that an objective test, the MRI, is the primary imaging study that experts prefer for diagnosis. Deposition of Dr. West, Doc. #32, pp. 13-14. Dr. Wunder, the defense expert, also characterized the MRI as "the gold standard" for diagnosing disc degeneration, protrusion, and herniation. Deposition of Dr. Wunder, Doc. #53, p. 13.

{¶ 37} As was noted earlier, Dr. West indicated that the MRI showed both disc herniation and disc degeneration in the cervical spine, the latter of which takes years to develop. Deposition of Dr. West at pp. 19, 23, 25, and 27-28. *Brate* at ¶ 25 and 31-32 (affirming denial of directed verdict based on treating doctor's testimony that bone spurs shown on post-injury MRI "took years to develop and were there before the January 2010 injury"; therefore, the claimant suffered from pre-existing degenerative cervical disc disease that was substantially aggravated by the injury).

{¶ 38} The Bureau and Phoenix rely on *Strickler v. Columbus*, 10th Dist. Franklin No. 13AP-464, 2014-Ohio-1380, which denied recovery for aggravation. In that case, the court of appeals stressed the lack of an explanation such as that found in *Brate*. *Id.* at ¶ 13. As a result, the Tenth District Court of Appeals affirmed the decision of the trial court, which found that the claimant failed to prove her case by a preponderance of the evidence. *Id.* at ¶ 15-16. In contrast to *Strickler*, the expert in the case before us included an explanation like the one in *Brate*.

{¶ 39} In light of the preceding discussion, the trial court did not err in denying the motions for directed verdict and for JNOV. Accordingly, Phoenix's First and Fourth Assignments of Error, and the Bureau's First and Second Assignments of Error, are overruled.


### III. Alleged Error in Admitting Medical Reports Into Evidence

{¶ 40} Phoenix's Second Assignment of Error states that:

The Trial Court Erred When It Admitted into Evidence Dr. Derek Blacks' Medical Reports Since They Contained Impermissible Hearsay on the Ultimate Issue and No Exceptions Applied.

{¶ 41} Under this assignment of error, Phoenix contends that the trial court erred in admitting certain medical records of Dr. Black, Wood's treating physician, into evidence. The records in question are letters of December 18, 2012, February 19, 2013, and October 3, 2013, from Dr. Black to Woods' attorney. In these letters, Dr. Black states that Woods sustained substantial aggravation at the C5-6 and C6-7 discs. The trial court admitted the letters, over objection, because they were part of the medical records that Dr. Wunder reviewed when performing his medical evaluation of Woods.

{¶ 42} "A trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66, 567 N.E.2d 1291 (1991).

{¶ 43} The information in the letters was hearsay, because Dr. Black did not testify at trial. Evid.R. 801(C). However, Evid.R. 803(6) provides an exception to the hearsay

rule for business records like medical records. The Tenth District Court of Appeals has held that "[t]o qualify for admission under the business-records exception, a medical record containing a physician's diagnosis must meet certain conditions, as outlined" in *Hytha v. Schwendeman*, 40 Ohio App.2d 478, 320 N.E.2d 312 (10th Dist. 1974). *Jefferson v. CareWorks of Ohio, Ltd.*, 193 Ohio App.3d 615, 2011-Ohio-1940, 953 N.E.2d 353, ¶ 10 (10th Dist.). Our own district has previously applied the criteria outlined in *Hytha*. *See Ruth v. Moncrief*, 2d Dist. Montgomery No. 18479, 2001 WL 1346086, *3-4 (Nov. 2, 2001).

{¶ 44} The criteria in *Hytha* include the following items:

"(1) The record must have been a systematic entry kept in the records of the hospital or physician and made in the regular course of business;

(2) The diagnosis must have been the result of well-known and accepted objective testing and examining practices and procedures which are not of such a technical nature as to require cross-examination;

(3) The diagnosis must not have rested solely upon the subjective complaints of the patient;

(4) The diagnosis must have been made by a qualified person;

(5) The evidence sought to be introduced must be competent and relevant;

(6) If the use of the record is for the purpose of proving the truth of matter asserted at trial, it must be the product of the party seeking its admission;

(7) It must be properly authenticated."

*Jefferson* at ¶ 10, quoting *Hytha* at syllabus, which in turn relies on R.C. 2317.40.

**{¶ 45}** Although the records of Dr. Black were not specifically authenticated, the defense agreed that Dr. Black's medical file, which included the letters, had been provided to Dr. Wunder, and there appears to have been no dispute about the authenticity of the records, the fact that Dr. Black was competent to make diagnoses, or most of the remaining factors in the *Hytha* test.

**{¶ 46}** In *Jefferson*, the Tenth District Court of Appeals mentioned an additional reason why a letter from a doctor to counsel would not be admissible.   In this regard, the court stated that:

> Further, it is unlikely that the letter from the physician to appellant's counsel included as part of the medical-records exhibit would qualify under the business-records exception.   This does not appear to be the type of document that would be prepared as part of a physician's regular practice in assessing and treating patients.   The fact that the physician's office sent the letter to appellant's counsel while appellant's claim was pending before the Industrial Commission further suggests that it was probably not prepared in the regular course of business.   *See Johnson v. Cassens Transport Co.,* 158 Ohio App.3d 193, 2004-Ohio-4011, 814 N.E.2d 545, ¶ 19 (when a physician's letters to a claimant's attorney were prepared while litigation was pending, "it was not unreasonable for the trial court to conclude that the circumstances of their preparation indicated a lack of trustworthiness," and the trial court did not abuse its discretion in excluding

the letters). Thus, this portion of the medical-records exhibit would fail to qualify under the business-records exception even if appellant had provided a proper foundation at trial.

*Jefferson*, 193 Ohio App.3d 615, 2011-Ohio-1940, 953 N.E.2d 353, at ¶ 13.

{¶ 47} The Eighth District has employed a somewhat different analysis. In *Smith v. Dillard's Dept. Stores, Inc.*, 8th Dist. Cuyahoga No. 75787, 2000 WL 1867272 (Dec. 14, 2000), the court of appeals discussed the common law and a statute (R.C. 2317.40) that existed prior to the adoption of Evid.R. 803(6) in 1980. *Smith* was a worker's compensation case in which the claimant's expert testified about opinions of other doctors who had concluded that the claimant suffered from dystonia. *Id.* at *3. After a jury verdict in favor of the claimant, the employer appealed, contending that the trial court had committed prejudicial error in allowing the doctor to include hearsay opinions of other doctors in his testimony. *Id.* The Eighth District Court of Appeals found that no error had been committed.

{¶ 48} In considering this issue, the court of appeals first discussed the state of the law prior to the adoption of Evid.R. 803(6). At that time, courts applied the business records exception adopted in 1939, and currently found in R.C. 2317.40. *Id.* at *4. In 1947, the Supreme Court of Ohio considered that exception in the context of medical records, and explained that hospital records could properly include diagnoses by those qualified to make them. These records would be excepted from the hearsay rule, and would be accepted as accurate and trustworthy unless shown to be otherwise, or kept for a "self-serving purpose of the party offering them in evidence * * *." *Id.*, discussing *Weis v. Weis,* 147 Ohio St. 416, 425-416, 72 N.E.2d 245 (1947).

**{¶ 49}** *Smith* also mentioned *Hytha*, which was decided in 1974, and the criteria listed in *Hytha* for admission of evidence. *Id.* at *6. The court of appeals then noted that Ohio's statute, R.C. 2317.40, was worded similarly to a federal statute and common law rules that resulted in the adoption of Fed. Evid. R. 803(6) in 1975. *Id.* The federal rule included opinions and diagnoses under the hearsay exception, and the 1972 advisory committee notes for the federal rule cited *Weis* as being among state court decisions that had favored admissibility of diagnostic entries. *Id.* at *6-7. However, Ohio did not similarly include opinions and diagnoses within the hearsay exception when it adopted Evid.R. 803(6) in 1980.

**{¶ 50}** In *Smith*, the court of appeals stated that:

Given the language of the federal advisory committee notes, Ohio courts should not construe the omission of the words "opinions" and "diagnoses" in the Ohio rule as indicative of an intent to change the principles of Ohio common law. Because the federal rule setting forth the hearsay exception regarding records of regularly conducted business activity was adopted, at least in part, to reflect the common law of this state, we cannot say that the omission of the words "opinion" and "diagnoses" in Evid.R. 803(6) reflects an intent to preclude the admissibility of an otherwise qualified medical report or record under that exception merely because the report or record contains out-of-court opinions or diagnoses. Moreover, to have included the words "opinions" and "diagnoses" within the text of Evid.R. 803(6) would have been redundant of the case law applying R.C. 2317.40. As Evid.R. 102 (as amended eff. July 1, 1996), makes clear,

*"[t]he principles of the common law of Ohio shall supplement the provisions of these rules, and the rules shall be construed to state the principles of the common law of Ohio unless the rule clearly indicates that a change is intended.* [Emphasis added.]"  Based upon Evid.R. 102, and considering both the case law interpreting R.C. 2317.40 rendered before the inception of Evid.R. 803(6) and the similarity in wording of both R.C. 2317.40 and Evid.R. 803(6), together with the intent of Fed.R. Evid. 803(6), it is clear that "opinions" and "diagnoses" contained within medical reports or records fall within the business records hearsay exception of Evid.R. 803(6).   As such, the rules announced in *Weis* and *Hytha* "supplement" Evid.R. 803(6) to the extent they: (1) apply to the admissibility of medical records and their contents; and (2) have not been otherwise superceded by other evidentiary rules.

(Footnotes omitted.)   *Smith*, 8th Dist. Cuyahoga No. 75787, 2000 WL 1867272, at *7.

{¶ 51} In *Smith*, the court of appeals held that the trial court did not prejudicially err in admitting the evidence.  In this vein, the court observed that the employer did not object at trial and did not challenge the foundation of the opinions; instead, the employer simply contended that the records were not admissible under Evid.R. 803(6) because they were opinions or diagnoses.   *Id.* at *8.

{¶ 52} The Third District Court of Appeals has also found that a trial court did not abuse its discretion by allowing a non-testifying doctor's diagnosis to be admitted into evidence, where the report containing the diagnosis was kept in the regular course of treatment, contained relevant evidence about the claimant's condition, no question was

raised about its authenticity, and the report was used by a testifying doctor in his treatment and diagnosis. *Wasinski v. PECO II, Inc.*, 3d Dist. Crawford No. 3-08-14, 2009-Ohio-2615, ¶ 31.

{¶ 53} In contrast, the First District Court of Appeals has rejected the decision in *Smith*, and has held that " 'Evid.R. 803(6) does not allow for opinions and diagnoses found in business records to be admitted into evidence.' " *Guarino-Wong v. Hosler*, 1st Dist. Hamilton No. C-120453, 2013-Ohio-1625, ¶ 15, quoting *Meyers v. Hot Bagels Factory, Inc.*, 131 Ohio App.3d 82, 101, 721 N.E.2d 1068 (1st Dist.1999). In *Guarino-Wong*, the court of appeals noted that the Supreme Court of Ohio had not yet decided the issue, and that it would continue to follow *Myers*, which was the law in the First District. *Id.* at ¶ 17.

{¶ 54} The Supreme Court of Ohio did not permit an appeal in either *Smith* or *Guarino-Wong*. *See Smith v. Dillard's Dept. Stores, Inc.*, 91 Ohio St.3d 1508, 746 N.E.2d 611 (2001) (dismissing appeal sua sponte), and *Guarino-Wong v. Hosler*, 136 Ohio St.3d 1494, 2013-Ohio-4140, 994 N.E.2d 464 (refusing to accept appeal for review). However, we need not resolve the issue, because even if the trial court erred in admitting the letters from Dr. Black, the error was not prejudicial.

{¶ 55} As an initial matter, we note that Phoenix and the Bureau did object to admission of the records. The discussion at trial about admission appears to have centered primarily on the fact that the defense did not believe that the doctor's medical opinions fell within the hearsay exception of Evid.R. 803(6). *See* Transcript of Proceedings, pp. 145-146 and 158-169. However, the defense also objected because the doctor's opinion was expressed in a letter to an attorney. On balance, even though the law is not particularly clear, we think the trial court should have excluded the evidence

because it could be considered "self-serving" under *Weis*, and, therefore, untrustworthy, or not within the type of systemic entry kept in a physician's records under *Hytha*. *Weis*, 147 Ohio St. at 425-416, 72 N.E.2d 245; *Hytha*, 40 Ohio App.2d at 478, 320 N.E.2d 312. Even if we followed what appears to be the "per se" inadmissibility rule of the First District Court of Appeals, the result would be the same.

{¶ 56} The issue thus becomes whether the admission of the evidence was prejudicial. "For error to be reversible, the appellant must be prejudiced." (Citation omitted.) *Shank v. Charger, Inc.*, 186 Ohio App.3d 605, 2010-Ohio-1129, 929 N.E.2d 520, ¶ 33 (2d Dist.).

{¶ 57} According to Phoenix, written statements of medical professionals carry "untold weight" for juries, and an expert's opinion, when left unchallenged by cross-examination, is unquestionably prejudicial. However, this ignores the fact that Dr. Wunder was able in his testimony to challenge and comment on Dr. Black's analysis. *Compare Reneau v. Con-Way Transp. Services, Inc.*, 6th Dist. Wood No. WD-07-003, 2007-Ohio-6368, ¶ 36 (finding no abuse of discretion in admitting records of non-testifying doctor. The court stressed that "[it is illuminating to note that appellant's own expert witness utilized and relied upon the disputed records in formulating his expert opinion.")

{¶ 58} Dr. Wunder stated that after his review of Dr. Black's records, the symptoms noted were more likely due "to a sprain/strain injury as opposed to a disk problem." Deposition of Dr. Wunder, Doc. #53, p. 19. Dr. Wunder, who was board-certified in both physical medicine and rehabilitation as well as electrodiagnostic medicine, also rejected the contention that Woods had a disc herniation or that any herniation, bulge, protrusion, or condition on the MRI was caused by a workplace injury. *Id.* at pp. 20-23. We

conclude that the Bureau and Phoenix were not materially prejudiced by admission of the evidence.

{¶ 59} Accordingly, Phoenix's Second Assignment of Error is overruled.

## IV.   Alleged Error in Jury Instruction

{¶ 60} Phoenix's Third Assignment of Error states that:

The Trial Court Erred When It Permitted over Phoenix's Objection a Jury Instruction on Woods' Claim that His 2012 Alleged Work Place Injury Substantially Aggravated Disc Herniations at C5-6 and C6-7 Levels.

{¶ 61} This assignment of error is based on the lack of sufficient evidence to support substantial aggravation of a pre-existing condition.   Since that argument has already been rejected, this assignment of error is also without merit and is overruled.

## V.   Manifest Weight Challenge

{¶ 62} Phoenix's Fifth Assignment of Error is as follows:

Because There Was Absolutely No Competent Credible Evidence Establishing that Woods Had a Pre-Existing Disc Herniation Which Was Substantially Aggravated by His Alleged 2012 Workplace Incident, the Jury's Verdict and Trial Court Judgments Are Against the Manifest Weight of the Evidence.

{¶ 63} Under this assignment of error, Phoenix contends that the judgment is against the manifest weight of the evidence.   In support of this contention, Phoenix makes the same claims it previously did about denial of the motions for JNOV, i.e., that

the evidence was insufficient to establish substantial aggravation of a pre-existing condition. Phoenix also adds that there was a lack of credible evidence, although it makes no specific comments on credibility other than arguing, as before, that there was no evidence of a pre-existing disc herniation. As we previously noted, that is an incorrect view of the required evidence.

{¶ 64} In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012 Ohio 2179, 972 N.E.2d 517, the Supreme Court of Ohio concluded that the manifest weight standards outlined in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), should apply to civil cases. *Id.* at ¶ 17. Thus, "[w]hen a [judgment] is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *Thompkins* at 387. "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the [judgment].' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 65} In *Eastley*, the Supreme Court of Ohio also stressed that "[i]n weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. As a result:

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every

reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Id.,* quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, which in turn quotes 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

{¶ 66} For the reasons previously discussed, the judgment is not against the manifest weight of the evidence. Dr. West testified as to the substantial aggravation of a pre-existing condition, and the jury could have chosen to find Dr. West's testimony more credible. Accordingly, Phoenix's Fifth Assignment of Error is overruled.

VI. Motion to File Sur Reply Brief

{¶ 67} In December 2015, Woods filed a response to a motion to strike contained in the Bureau's Reply Brief. Woods additionally asked permission to file a sur reply brief responding to issues in the Bureau's Reply Brief that Woods allegedly did not have a prior opportunity to address. After consideration of the matters raised, the motion to strike as well as the motion to file an additional brief are overruled. We are capable of sorting out the issues that have been properly raised, and our opinion has addressed all relevant arguments of the parties.

## VII. Conclusion

{¶ 68} All the assignments of Phoenix and the Bureau having been overruled, the judgment of the trial court is affirmed. The Bureau's motion to strike parts of Woods' Brief, and Woods' motion to file a sur reply brief are also overruled.

. . . . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Gary D. Plunkett
Brett Bissonnette
Shaun Omen
Shawn W. Maestle
Deirdre G. Henry
Hon. Mary Katherine Huffman